■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MARK MASON, Respondent.—Appeal from an order of the County Court of Ulster County, entered September 9, 1976, which granted defendant's motion to suppress his oral and written statements and physical evidence seized by police. The defendant is charged with two counts of murder in the second degree. A suppression hearing was held on March 29, 1976. The court found that the defendant had been placed under arrest at the time he was questioned by police in a police vehicle and, absent *Miranda* warnings, the order of suppression was issued. A review of the law regarding custodial interrogation which requires the giving of *Miranda* warnings indicates that not every questioning of a person in a police investigation to establish the facts surrounding a crime requires the giving of the *Miranda* warnings. The *Miranda* warnings are necessary in situations which are inherently coercive *(Miranda v Arizona,* 384 US 436). Custodial interrogation takes place when several factors mesh. If a person innocent of a crime reasonably would conclude from the circumstances surrounding the interrogation that he is in custody, custodial interrogation can then be said to have occurred and the required warnings must be given. It is the circumstances and atmosphere surrounding the interrogation which determine whether a person is in custody *(People v Rodney P.,* 21 NY2d 1). In the case at hand, the victim had been shot at a Hasidic summer camp at about 11:00 P.M. on July 20, 1975. It was thought that the shot may have come from an auto which had stopped on a road near the camp and which had left immediately after the shots were heard. A .22-caliber casing was recovered in the area. The shooting was preceded by a rock and garbage throwing incident involving a car speeding up and down the same road with three blacks or Hispanics in it. Police were informed that a camp resident had followed a car, a half hour before the shooting incident, to the Smith residence. The police went to the Smith home and questioned the Smiths and the defendant briefly, seeking to learn if anyone had seen anything. They said they would return later with ammunition to test a .22-caliber gun the Smiths owned. The police were informed that the defendant also had such a caliber gun at his place of work, Utopia Lodge. After returning at about 9:00 A.M., the police requested of Mr. Smith, in whose home the defendant, a 16-year-old youth, was residing, permission to speak with him. At this juncture, the police had not acquired any relevant additional information other than what they possessed on their earlier visit. None of their information implicated the defendant in the shootings and they had no facts on which to proceed against the defendant. The defendant was awakened, and he dressed, went to the bathroom and was invited outside to speak to the officers. There were people sleeping in the Smith house and, therefore, he was not questioned in the house. The questioning occurred in a police car parked in the driveway. One of the officers informed Mr. Smith of what rights the defendant would be entitled to if he were implicated. This was said in the defendant's absence. The defendant denied any knowledge of the crime and thereafter ensued a discussion of whether he would take a lie detector test. After 10 or 12 minutes of conversation, the defendant said, "Yeah, I did it". The defendant was then told not to say anything further by Officer Brenner, who left the auto momentarily and went to tell the Smiths what had occurred. Officer Schubert asked the defendant if he had used the gun which was at his place of work. To this defendant replied, "Yes". He was then put under

arrest and given his "rights". The defendant made further oral statements implicating others as he was being driven to Utopia Lodge, where his gun was surrendered to the police, at their direction. Thereafter, the defendant was transported to the police barracks, questioned further for four to five hours and a confession was elicited from him, reduced to writing and signed by him. His parents arrived at about 12:00 noon while the confession was being taken and were finally permitted to see their son at 2:00 P.M. when the confession was completed. They had asked about him but were told to wait by the desk officer. They did not inform the police to desist from any questioning of their son. Considering all the circumstances surrounding the questioning of the defendant, it cannot be reasonably inferred that the defendant was in custody when he was questioned. In reaching this conclusion, several factors are determinative. If the defendant were the suspected target of the investigation, the police would not have permitted him to remain at large on the occasion of their first visit to the Smith home. They dealt with him in a manner which indicated that no suspicion had yet focused on him. Their attitude and actions indicated that they believed he may have been a witness to some of the events. Between the two visits, nothing had occurred to attach suspicion to him. He was being questioned in the familiar surroundings of the yard of the place where he lived. Mr. and Mrs. Smith, who had custody of him, were nearby and no high pressure tactics were used in his questioning. There was nothing to indicate that he was restrained by the police. These circumstances are at great variance from the ones found by New York courts to constitute custodial interrogation. The case of *People v Rodney P. (supra)* is helpful to an analysis of this matter. The information the police possessed therein was certainly stronger than in the present case in focusing attention on the accused, but since the restraint of the accused was not significant, the court held no *Miranda* warnings were necessary. In *People v Rodney P. (supra)*, the police drove to the defendant's home, a private dwelling, and found him outside with two others. They called him aside to speak to him about what they had learned earlier from another youth, who had said that the defendant was his accomplice in a car theft. They questioned him about being with the other lad and taking the car, and he made admissions to them. The questioning took three or four minutes. Under those circumstances, the court held that custodial interrogation was not present because although defendant was restrained, the restraint was not significant. In the case of *People v Yukl* (25 NY2d 585), where the surrounding circumstances were more intimidating and restrictive than in this matter, the Court of Appeals nevertheless concluded that custodial interrogation had not taken place. We are, therefore, led to the inescapable conclusion that the oral admission of defendant Mason is admissible, as is the written statement subsequently made by him to the police. Order reversed, on the law and the facts, and motion denied. Greenblott, J. P., Kane, Main and Mikoll, JJ., concur; Herlihy, J., concurs in the result only.