■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN B. MUNRO, Appellant. — Appeal from a judgment of the County Court of Columbia County (Zittel, J.), rendered March 2, 1981, convicting defendant upon his plea of guilty of the crime of attempted criminal possession of stolen property in the third degree. Initially, we hold that defendant's plea of guilty operated as a waiver of his statutory right to dismissal on speedy trial grounds (CPL 30.30; *People v Friscia,* 51 NY2d 845). The proof fails to demonstrate any deprivation of defendant's constitutional right to a speedy trial (CPL 30.20; *People v Taranovich,* 37 NY2d 442). Defendant contends that he was "arrested" at his home in violation of his Fourth Amendment rights, citing *Payton v New York* (445 US 573). This court has declined to apply *Payton* retroactively (*People v Graham,* 76 AD2d 228, mot for lv to app den 48 NY2d 980). Moreover, the record demonstrates that defendant was neither arrested, nor placed in custody at his home. It is acknowledged that the police did not have probable cause to effect an arrest at the time they went to defendant's home. Nonethe-

less, the ensuing conversation with defendant was noncoercive and voluntary in nature. The detective testified that he *requested* that defendant accompany him to the police station to which request, defendant's wife confirmed, he voluntarily acceded. Concededly, factors can be found to show that a custodial atmosphere existed. Approximately six officers were present in the home, defendant was transported by police car, and he testified that he did not feel free to refuse the police request. Any conflict in testimony, however, presented a credibility question for the suppression court, which declined to find any intimidation and essentially deemed defendant's co-operation voluntary in nature (see *People v Morales,* 42 NY2d 129, 137, cert den 434 US 1018). Not insignificant is the fact that defendant knew most, if not all, of the officers involved, either personally, or through his work. In short, this is not a case where, although lacking probable cause, the police seized defendant and transported him to the police station for interrogation (cf. *Dunaway v New York,* 442 US 200, 216). Next, a defendant argues that an oral admission was obtained in violation of his *Miranda* rights (see *Miranda v Arizona,* 384 US 436). The record shows that Detective Fikar was advised by the District Attorney not to initiate *Miranda* warnings until defendant "acknowledges some knowledge of the crime which would be recognition of the check". Upon entry into defendant's home, Detective Fikar presented a check to defendant for identification. Defendant acknowledged the check and immediately was advised of his *Miranda* rights. While defendant argues that this procedure was an abrupt impropriety mandating suppression of the admission, the real issue is whether this discourse was custodial in nature such as to compel a reading of the *Miranda* warnings preliminary to any interrogation (see *Miranda v Arizona, supra*). Essentially, the circumstances and atmosphere under which the statement was obtained must be examined to determine whether a custodial setting existed (*People v Rodney P.,* 21 NY2d 1; *People v Booker,* 66 AD2d 474, affd 49 NY2d 989). The mere fact that police interrogation occurred is not dispositive of the issue. Considering all the circumstances, it cannot reasonably be inferred that defendant was in custody at this point in time (see *People v Rodney P., supra; People v Mason,* 59 AD2d 580). The questioning occurred within the familiar surroundings of defendant's own living room, with defendant's wife present. There is nothing to indicate that defendant was coerced by the police in questioning of limited duration. Very simply, in response to a question from Detective Fikar, defendant rendered the statement in issue. In our view, the oral admission is admissible (see *Oregon v Mathiason,* 429 US 492; *People v Yukl,* 25 NY2d 585, cert den 400 US 851). Defendant further contends that he did not voluntarily sign the written consent authorizing the search of his home. Upon arrival at the police station, defendant was again advised of his *Miranda* rights and a tape-recorded interrogation ensued. By this time, defendant had been advised that he was suspected of possessing stolen property. During this interrogation, defendant acknowledged having some of the stolen property at his home, and signed the consent authorizing the search which disclosed stolen property therein. At the suppression hearing, defendant testified that he was misled into signing the consent and that he would have requested a lawyer had he known he was the target of an investigation. Under the circumstances, the burden of proof rests heavily upon the People to establish a voluntary consent (*People v Whitehurst,* 25 NY2d 389). In our view, the People have satisfied this burden through the testimony of Detective Fikar, who confirmed that defendant had been advised of his rights prior to the police station interrogation, and had voluntarily authorized the consent search. This is not a situation where defendant's bald assertions of constitutional improprieties stand uncontradicted (cf. *People v Harrington,* 70

Misc 2d 303 [where the People failed to produce a witness to refute defendant's contention of duress]). The record demonstrates that the suppression court's ultimate rulings withstand the appropriate standards of review and should be affirmed. Judgment affirmed, without costs. Main, J. P., Casey, Mikoll, Yesawich, Jr., and Weiss, JJ., concur.