## (October 7, 1982)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENEDICT J. CLOSE, SR., Appellant, et al., Defendant. — Appeal from a judgment of the County Court of Fulton County (Albanese, J.), rendered May 22, 1980, upon a verdict convicting each defendant of the crime of murder in the second degree. Defendant and his wife were indicted and tried for the murder of defendant's ex-wife, Ethel Close, into whom they injected a lethal amount of insulin at her home in Northville, New York, on April 24, 1979. According to the individual

confessions of each defendant, they entered decedent's home prior to her return from work. A scuffle ensued during which Benedict Close grabbed decedent while Betty Jane Close injected insulin into the victim's arm with a syringe. They told her she had been given shots of vitamin B-12. Benedict then carried Ethel to the cellar stairway and dropped her down the stairs. Miraculously, decedent survived and was able to telephone her son, Benedict Close, Jr., a Gloversville police officer, describing the attack and stating that she was ill. She was taken to a hospital where she lapsed into a coma, and ultimately died on May 4, 1979. The next day defendant was stopped by Investigator Swanker of the State Police while driving in Northville. The officer testified that he requested that defendant accompany him to the police substation in Mayfield and that defendant freely acquiesced. Swanker testified that at this time he did not consider defendant a suspect, presumably because decedent's son had indicated that he did not believe defendant was responsible. At the Mayfield substation, defendant informed Swanker that he had been in decedent's house to fix a water pump and that his ex-wife was ill. Defendant then agreed to submit to a polygraph test and was taken to the Loudonville station for that purpose. In preparation for the test, Investigator Phelan advised defendant of his *Miranda* rights. Just before the test was administered, defendant indicated that it would not be necessary since he could not pass. Defendant was again advised of his *Miranda* rights, and voluntarily made a confession which implicated both himself and Betty Jane Close in the commission of the crime. Shortly thereafter, Betty Jane made a similar confession. Following a suppression hearing, both statements were ruled admissible. A joint trial was conducted, in which the codefendants were represented by the same attorney. During the trial, defendant maintained his innocence, while his wife raised the defense of insanity. The jury returned a verdict of guilty for both defendants and the court subsequently sentenced each to a term of 15 years to life imprisonment. Defendant Benedict J. Close, Sr., has appealed. Defendant contends that he was denied his right to effective assistance of counsel by reason of the joint representation of him and his wife at trial by the same attorney. The record indicates that at the arraignment and again on September 19, 1979 and February 1, 1980, the trial court questioned defendant and his attorney extensively concerning any possible conflict, and that each confirmed that no conflict was anticipated by continuance of joint representation. It is eminently clear that the court made a diligent and adequate attempt to alert defendant throughout these proceedings that a potential for conflict existed and that he had the right to separate counsel. The rule is that joint representation of multiple defendants is not per se violative of one's constitutional right to effective assistance of counsel (*Holloway v Arkansas,* 435 US 475, 482; *People v Gonzalez,* 30 NY2d 28, 34, cert den 409 US 859). Defendant, having consented to joint representation, waived any claim of possible prejudice resulting from his selection (*People v Lloyd,* 51 NY2d 107; *People v Ortiz,* 49 NY2d 718; *People v Gomberg,* 38 NY2d 307; *People v Malloy,* 83 AD2d 843). That defendant expressed misgivings after the jury was impaneled and at the time of sentencing does not negate the previous opportunities afforded him to choose counsel (see *People v Gibson,* 84 AD2d 885). Defendant's further contention that errors of judgment by his trial attorney, coupled with counsel's dual representation, had the cumulative effect of depriving him of effective assistance of counsel, is not persuasive (see *People v Droz,* 39 NY2d 457). This is not an instance where each defendant propounded inimical defenses (cf. *People v LaMere,* 39 AD2d 15 [wherein one defendant pleaded guilty, and the other professed innocence]). Here, defendant pleaded not guilty, while his wife pleaded not guilty by reason of insanity. At trial, defendant testified to his own

innocence and maintained that his wife was sick, paranoid and had undergone a personality change. Medical testimony was produced in an attempt to substantiate the wife's mental incapacity. Had the jury accredited this testimony, they could have returned a verdict favorable to each defendant. We reject defendant's contention that the trial should be nullified because of alleged errors in trial strategy, noting "unsuccessful strategy decisions do not spell out ineffective assistance" (*People v Jackson,* 52 NY2d 1027, 1028). Our review of the record confirms that counsel provided meaningful representation (*People v Baldi,* 54 NY2d 137; *People v Aiken,* 45 NY2d 394). Defendant further contends that his statement on April 25, 1979 should be suppressed because he was not advised of his *Miranda* rights when he was initially taken into custody. In determining whether defendant was in custody, the correct test is what a reasonable person, innocent of any crime, would have thought under the circumstances (*People v Yukl,* 25 NY2d 585, 589, cert den 400 US 851; *People v Byers,* 71 AD2d 77, 80). Where, as here, different inferences may be drawn from the facts, the determination rests with the trier of the facts, and should be upheld unless unsupported as a matter of law (see *People v McNeeley,* 77 AD2d 205, 208-209). Defendant argues that he was in custody the moment he was stopped by the State Police in Northville and transported by police vehicle to the Mayfield station, and later to Loudonville, by contending that the officers deemed him a prime suspect (see *People v Claudio,* 85 AD2d 245, 253). The suppression court, however, determined that defendant voluntarily accompanied Investigator Swanker and was not a suspect, and hence, not in custody until his admission that he could not pass a polygraph test. It is clear that *Miranda* warnings were properly given after this admission and prior to the statement defendant sought to suppress. The fact that questioning occurred in a police vehicle or at the station is not dispositive of the custody issue (*People v Munro,* 86 AD2d 683). While there was a conflict in testimony as to whether defendant was targeted as a suspect from the onset, this dispute presented a credibility question for the court to assess. In our view, the suppression court's determination is supported by the evidence and should not be disturbed (*People v Munro,* 86 AD2d 683, *supra*). Moreover, contrary to defendant's contentions, the record fails to suggest that he was in any manner threatened or coerced into making the statement (see *People v Anderson,* 42 NY2d 35). Nor did the delay in arraignment, if any, render defendant's statement involuntary (*People v Tarsia,* 50 NY2d 1, 12). The People readily met their burden of showing a knowing and voluntary waiver of defendant's Fifth Amendment privilege against self incrimination (*People v Whitehurst,* 25 NY2d 389). Defendant next urges that the introduction into evidence of his wife's statement was unduly prejudicial and violative of his constitutional right to confrontation. Here, Betty Jane's unredacted confession was introduced although she did not testify. It has been well established that when a nontestifying codefendant's extrajudicial confession is introduced and adds substantially to the prosecutor's case against another defendant, that defendant is denied his constitutional right to confrontation (*Bruton v United States,* 391 US 123, 127-128). However, when, as here, a defendant has made a full and voluntary confession virtually identical to the confession of his codefendant, the *Bruton* rule is not violated (see *People v Safian,* 46 NY2d 181; *People v McNeil,* 24 NY2d 550, 552-553). Examination of the subject confessions confirms a substantial identity in regard to the operative facts of the incident. In essence, each confession states that as the defendant held decedent, the codefendant injected her with insulin. We are convinced that the similarity of these confessions precludes the potential for prejudice anticipated by *Bruton.* Since defendant's own confession provides independent and substantial proof

of his guilt, the risk of prejudice emanating from his wife's confession virtually "vanishes" (*People v Safian, supra,* p 189). Moreover, the court properly instructed the jury that each statement was binding only against the declarant. In sum, since each defendant's confession contained the same material facts, there was no significant risk defendant would be unduly prejudiced by the admission of his codefendant's confession. Finally, since *Bruton* was not applicable, and a joint trial would have occasioned a burdensome duplication of effort, we cannot say the court abused its discretion in refusing defendant's motion for severance (*People v Bornholdt,* 33 NY2d 75, 87). We have examined defendant's remaining contentions and find them to be without merit. Judgment affirmed. Mahoney, P. J., Sweeney, Kane, Weiss and Levine, JJ., concur.