■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD DODT, Appellant. — Appeal from a judgment of the County Court of Albany County (Clyne, J.), rendered August 24, 1981, upon a verdict convicting defendant of the crime of kidnapping in the second degree. On February 20, 1981, at about 12:15 A.M., Theresa Culp, a nurse at Albany Medical Center, finished work and walked across New Scotland Avenue to her car which was located in a well-lighted parking lot. As she was about to unlock her car door, an adult male ran up behind her and fell down in front of her car, precipitating a conversation for about two minutes. When Mrs. Culp then turned to enter her car, the male grabbed her from behind, put one hand over her mouth, and pushed her some 40 feet toward his car, which had the passenger door open. While being pushed in this fashion, her assailant stated several times, "Don't scream, lady, I've got a gun in my pocket." As they approached his car, she was able to forcefully bite his finger, causing him to release her. As she screamed, he fled to his car. She observed him driving away from the scene and again later in the vicinity of her home. At approximately 5:00 A.M. the following day, two Albany police officers on routine patrol observed a vehicle matching the description given police by Mrs. Culp contained in a teletype they received before going on duty. They stopped the vehicle, and one of the officers noted that defendant, who was driving, fit the general description of the individual also contained in the teletype. The car was impounded, and defendant brought to the police station where later that morning he was identified by the victim in a lineup. Defendant was indicted for kidnapping in the second degree (Penal Law, § 135.20). Following his unsuccessful motion to suppress the victim's identification, he was tried and convicted. The first issue raised on this appeal is whether the evidence was legally sufficient to support his conviction for kidnapping in the

second degree. Specifically, defendant contends that there was a failure of proof that defendant "abducted" the victim, a necessary element of the crime. "Abduct" is defined, in relevant part, as "to restrain a person with intent to prevent his liberation by * * * using or threatening to use deadly physical force" (Penal Law, § 135.00, subd 2). There is no dispute that the victim was "restrained", and clearly, a jury could infer from the severe physical restraint coupled with the repeated statements referring to his possession of a gun, that the restraint was accomplished by "threatening to use deadly physical force". Defendant contends, however, that in the absence of proof that he actually had a gun capable of inflicting death or serious physical injury, there was insufficient evidence to establish abduction by threat, as a matter of law, relying on *People v Fraczak* (103 Misc 2d 388). *Fraczak,* holding that restraint by a threat to explode what proved to be a sham grenade did not constitute the crime of kidnapping, is distinguishable. Based upon statements in earlier cases that the crime was to be restricted to instances where there was "a genuine 'kidnapping' flavor", the court read into the definition of "abduct" that the threat used "must be capable of present realization" (*id.,* at pp 390-391). We decline to follow *Fraczak* and hold that the evidence here was sufficient. First, the legislative history is devoid of support for an interpretation beyond the literal meaning of the phrase "threatening to use deadly physical force". Under these circumstances, we are obliged to give effect to the fair import of the words used in the statute, without further limitations or restrictions (Penal Law, § 5.00; *People v Brengard,* 265 NY 100, 107; *People v Morton,* 284 App Div 413, 417, affd 308 NY 96). Applying the literal meaning of the definition is also consistent with other provisions of the Penal Law defining various serious criminal offenses in terms of a reasonably perceived threat to inflict serious physical injury without requiring proof that the threat was capable of realization (see, e.g., the definition of "forcible compulsion" for purposes of the definitions of rape in the first degree [Penal Law, § 130.35], sodomy in the first degree [Penal Law, § 130.50] and sexual abuse in the first degree [Penal law, § 130.65]). Moreover, elsewhere in the kidnapping article, the Legislature had no difficulty in articulating its intention to require proof of an actual, rather than a merely perceived, danger of serious physical injury (see unlawful imprisonment in the first degree [Penal Law, § 135.10]). Since it is virtually impossible to establish that a threat to use deadly physical force is "capable of present realization" short of proof of the abductor's possession of an operable gun, knife or other dangerous instrument, the effect of the *Fraczak* interpretation is to engraft a weapons possession requirement into the definition of the crime. This would not only restrict effective prosecution of kidnapping in the second degree, but also of kidnapping in the first degree, which similarly contains abduction as a necessary element. We likewise reject defendant's contention that he could not be convicted of kidnapping under the doctrine of merger. Here, there was a total absence of any evidence of the commission or attempted commission of any other crime to which the abduction of the victim was incidental or inseparable from, and therefore there was nothing into which the kidnapping could merge (*People v Smith,* 47 NY2d 83, 87). Defendant contends deprivation of his constitutional rights in the failure to suppress both pretrial and in-court identification by the victim. This argument is predicated on the failure of the prosecution to establish reasonable cause for the stop of his vehicle and the ensuing arrest. Initially, we find that there is a sufficient basis in the record to sustain the suppression court's finding that the stop of defendant's automobile was made upon probable cause. The dissent has quoted from the testimony of Officer Turley at the suppression hearing, but has failed to take cognizance of the testimony of the victim, which demonstrates that she described the crime, the perpetrator and his automobile to the

police. She testified: "Q: And what, if anything, did Lt. Dean state to you at that period of time or at that time? A: That they had picked up a suspect that *matched the description of the person that I had said assaulted me."* (Emphasis added.) This testimony must be considered together with that of the police officer. The following question and answer appear: "Q: Now, I believe you testified that prior to going on duty at roll call you had received certain *information* about a *certain vehicle or incident*? [Emphasis added.] A. That's correct." Although the teletype message was not received in evidence, we hold there was sufficient basis from the testimony to support the court's finding of probable cause. While the burden remains on the People at the suppression hearing to establish reasonable cause to believe an offense had been committed by defendant, we believe that burden has been met. The police were entitled to act on the strength of the teletype message received before going on duty. Where such a report furnishes probable cause to make a stop or an arrest, the sender's knowledge is imputed to the receiver, and when the receiver acts, he presumptively possesses the requisite probable cause (*People v Bowdoin,* 89 AD2d 986). While this presumption may be rebutted (*People v Lypka,* 36 NY2d 210, 212-213), it is only when the sending officer's communication is called into question that the People must demonstrate that the sending agency itself possessed the requisite probable cause to act (see *People v Havelka,* 45 NY2d 636; *People v Lypka, supra*). However, before the People may be called upon to support the presumption by an evidentiary showing, the defendant must specifically challenge the reliability of the sender's information as opposed to the sufficiency of the information provided, or independently possessed by the receiver. Where, as here, a motion to suppress does not attack the underlying basis for a police radio report, the presumption of probable cause to issue it remains (*People v Bowdoin, supra;* see, also, *People v Jenkins,* 47 NY2d 722). To challenge reliability, it must be interjected in a manner to fairly apprise the court and opposing party that it is being contested (*People v Bowdoin, supra,* p 987). At bar, defendant's supporting affidavit failed to either specifically or generally attack the teletype message or the reliability of the sender's or receiver's information. Nor did defendant raise this issue in his cross-examination of Officer Turley. Therefore, the People were not required to produce the sending officer (*People v Jenkins, supra; People v Bowdoin, supra,* p 987), and the presumption of probable cause remained intact. Nor can we agree that defendant was either placed under arrest or in custody at the time his vehicle was stopped. There is no such indication in the record, and his attorney's moving affidavit concedes he was not formally placed under arrest at this time. Officer Turley's uncontradicted testimony was that he "asked" defendant to come down to the station "for further investigation". In determining whether a defendant was in custody, the correct test is what a reasonable person, innocent of any crime, would have thought under the circumstances (*People v Yukl,* 25 NY2d 585, 589, cert den 400 US 851; *People v Byers,* 71 AD2d 77, 80). Although defendant may have been considered a suspect, the court could have properly found from the evidence before it that he voluntarily went to the police station (see *People v Close,* 90 AD2d 562; *People v Claudio,* 85 AD2d 245, 253-254). The fact that the identification occurred at the police station is not dispositive of the custody issue (see *People v Close, supra*). It follows that since there was no "detention", and in view of the above finding of probable cause, neither the pretrial lineup nor the in-court identification could be the fruit of an illegal arrest. Moreover, the record shows that the victim had ample uncontradicted opportunity to observe her assailant for over two minutes in an area she described to be well lighted. She observed him on the ground where he fell while approaching her and she helped him get up. She had a face-to-face

conversation with him before he attacked her after she turned away to enter her car. She saw him flee after she extricated herself from his grasp by biting him (see *People v Boodrow,* 90 AD2d 944). Nor did defendant make objection to her in-court identification testimony, which, the record shows, rested upon an independent recollection of her initial encounter with him, uninfluenced by the pretrial identification. Her capacity to identify her assailant in court neither resulted from nor was biased by any police conduct, lawful or unlawful, committed after she had developed that capacity (*United States v Crews,* 445 US 463, 473). Rules of exclusion should not be inflexibly applied to frustrate rather than promote justice, especially where reliability is the linchpin in determining the admissibility of in-court identification (*Manson v Brathwaite,* 432 US 98). We next consider defendant's arguments that the Trial Judge abused his discretion in permitting the prosecutor to inquire into the underlying facts of defendant's convictions for sexual abuse in 1977 and assault in 1976, for the purpose of impeaching his credibility, should defendant testify. A demonstrated determination to further self-interest at the expense of society or in derogation of the interests of others goes to the heart of honesty and integrity (*People v Sandoval,* 34 NY2d 371, 377). The rule evolved from *Sandoval* places upon a defendant the burden of advising the court of prior convictions and then demonstrating that the prejudicial effect of admission would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion (*People v Sandoval,* 34 NY2d 371, 378, *supra*). Here, defendant contends that inquiry into convictions for assault in 1976 and sexual abuse in 1977 would not only be inflammatory and tend to demonstrate his "criminal bent" to commit similar crimes (*People v Castillo,* 47 NY2d 270), but also has been rendered immaterial and irrelevant by the passage of time (*People v Sandoval,* 34 NY2d 371, 376-377, *supra*). The record shows that the suppression hearing consisted of a brief colloquy in which the prosecutor, not defendant, related the two convictions and that defendant offered no more than one sentence stating "neither of those two convictions should be permitted to be gone into in this trial or it would violate the *Sandoval* ruling". It can hardly be found that defendant met his burden. It has repeatedly been emphasized that the question as to whether a prosecutor should be precluded from impeaching a defendant's credibility by reference to prior immoral, vicious or criminal acts " 'is largely, if not completely, a matter of discretion which rests with the trial courts and fact-finding intermediate appellate courts' " (*People v Bennette,* 56 NY2d 142, 146; *People v Shields,* 46 NY2d 764, 765; see, also, *People v Mackey,* 49 NY2d 274, 281-282; *People v Brown,* 48 NY2d 921; *People v Sandoval,* 34 NY2d 371, 375, *supra*). The exercise of this discretion should be performed by the court by weighing the factors of possible prejudice against the People's need to impeach defendant's credibility (see *People v Williams,* 56 NY2d 236, 238-240). The trial court's decision here was made orally from the Bench and, although brief, demonstrates in our opinion that the Judge weighed the two closely timed convictions and determined that defendant's placement of his own self-interest above the laws of society would bear upon his credibility. The Court of Appeals has stated that in "a case involving cross-examination of [a] defendant as to prior misdeeds, this court pointedly declared that 'the wide latitude and the broad discretion that must be vouchsafed to the trial judge, if he is to administer a trial effectively, precludes this court, in the absence of "plain abuse and injustice" * * * from substituting its judgment for his and from making that difference of opinion, in the difficult and ineffable realm of discretion, a basis for reversal' " (*People v Duffy,* 36 NY2d 258, 263, cert den 423 US 861, quoting *People v Sorge,* 301 NY 198, 202). Since defendant produced no proof to meet

his burden in an effort to convince the trial court that the underlying facts of his convictions were such that, applying the *Sandoval* rule, proof of his prior convictions should have been barred, we find no error in the trial court's decision (*People v Poole,* 52 AD2d 1010). As in the recent case of *People v Bennette* (56 NY2d 142, *supra*), defendant here was on parole from the 1977 sexual abuse conviction. His credibility was not capable of impeachment by other less sensitive incidents. It cannot be said that it was unnecessary for the prosecutor to use these convictions for impeachment. Despite the inflammatory nature of the proof, there were legitimate and perhaps compelling reasons for permitting cross-examination of defendant concerning the underlying facts of such convictions, and thus justification for the exercise of discretion by the trial court (*People v Bennette,* 56 NY2d 142, 148, *supra*). Under these circumstances, it cannot be said that the trial court abused its discretion in denying defendant's application (*People v Duffy,* 36 NY2d 258, cert den 423 US 861, *supra; People v Poole,* 52 AD2d 1010, 1011, *supra*). We have examined defendant's remaining contentions and find them to be without merit. Judgment affirmed. Mahoney, P. J., Sweeney, Yesawich, Jr., and Weiss, JJ., concur.

Levine, J., dissents and votes to reverse in the following memorandum. Levine, J. (dissenting). Although I agree with the majority's determination on the substantive issues involved in the instant appeal, in my view a reversal and new trial are required because of errors committed by County Court in ruling on defendant's motion to suppress the victim's identification testimony and on defendant's *Sandoval* motion. The majority appears to sustain County Court's denial of the motion to suppress on two alternative, mutually inconsistent grounds. First, the majority holds that the victim's lineup identification was valid because the police had probable cause for arresting defendant when they stopped his vehicle and then brought him to police headquarters. The majority holds that a teletype message received by the arresting officer before going on duty at midnight prior to the arrest was sufficient to establish probable cause, relying on *People v Jenkins* (47 NY2d 722), *People v Lypka* (36 NY2d 210) and *People v Bowdoin* (89 AD2d 986). However, unless *Jenkins, Lypka* and *Bowdoin* can be read as totally eliminating the need to present evidence establishing probable cause at a suppression hearing in the case of an arrest based upon a police bulletin, radio or teletype message, these cases are totally inapposite. I begin with the unassailable principle that once a proper motion to suppress evidence is made,[*] the People have the burden of going forward with proof at the suppression hearing to establish the legality of the police conduct in the first instance (*People v Berrios,* 28 NY2d 361, 367). In the instant case, that meant the introduction of evidence by the prosecution that the police had reasonable cause to believe a crime was committed and defendant committed it, i.e., probable cause to sustain defendant's arrest (*People v Malinsky,* 15 NY2d 86, 91, n 2). Because of the often exigent circumstances presented and because of the usual reliability of information contained in a police bulletin, it has been held that the hearsay information contained in the bulletin is presumed to be valid, unless directly challenged (*People v Jenkins,* 47 NY2d 722, 724, *supra; People v Lypka,* 36 NY2d 210, 213-214, *supra; People v Bowdoin,* 89 AD2d 986, 986-987, *supra*). But the presumption only attaches to the reliability of the contents of the message; it does not obviate the People's burden of prima facie establishing the sufficiency of the information possessed by the arresting police agency to establish probable cause. That is why the courts in *Jenkins, Lypka* and *Bowdoin* carefully distinguished between the *sufficiency* of the information contained in the police message to establish

---

[*] Here, defendant's omnibus motion specifically challenged the lineup procedure on the ground that the arrest was made without probable cause.

probable cause and the *reliability* of that information (which must be specifically challenged before proof to sustain it is required of the People). Thus, in *Lypka,* the court states (p 213): *"It follows that where the bulletin or alert, prima facie, furnishes probable cause,* a reasonable search is permissible. In such circumstances the sender's knowledge is imputed to the receiver and, when the receiver acts, he presumptively possesses the requisite probable cause to search" (*People v Lypka,* 36 NY2d 210, 213, *supra;* emphasis added). Clearly, in *Jenkins* and in *Bowdoin,* the contents of the radio messages were sufficient to establish probable cause; therefore, the arrests were upheld, despite the absence of proof of the reliability of the information contained therein. As stated in *Bowdoin* (p 986): "However, before the People may be called upon to support the presumption by an evidentiary showing, the defendants must specifically challenge the reliability of the sender's information, *as opposed to the sufficiency of the information provided,* or independently possessed by the receiver" (*People v Bowdoin,* 89 AD2d 986, *supra;* emphasis added). What fatally distinguishes the instant case from the foregoing cases relied upon by the majority is the absence here of any evidence to establish that the teletype message relied upon by the arresting officer contained sufficient facts to establish probable cause that the defendant committed any crime. Indeed, the record is totally devoid of evidence that the teletype contained anything more than a description of defendant and his vehicle. The content of the teletype was never introduced in evidence. The following excerpts comprise the entire record at the suppression hearing concerning the content of the teletype and any other information given to the arresting officer before he made the arrest: "Q. And prior to going to work on February 21, 1981, were you or did you have knowledge of an alleged kidnapping or assault that occurred at the Albany College of Pharmacy parking lot on or about February 20, 1981? A. No, I did not. Q. What information did you have when you went on patrol on February 21, 1981? A. There was a teletype about the vehicle and about the general physical description of the subject. Q. Was there anything regarding any injury to the subject that was being sought? A. I can't recall." Thus, as to the teletype message itself, the People clearly did not present sufficient evidence from which the suppression court could have concluded that probable cause for the arrest existed. Nor does the thirdhand hearsay testimony of the victim, quoted by the majority, that she was told by a police lieutenant (who did not participate in the arrest) that a person had been picked up who matched the description of her assailant, add sufficient facts to demonstrate that the police had reasonable grounds to believe that defendant was that assailant. We (and the suppression court) are left entirely in the dark as to (a) what physical description the victim gave; (b) whether that physical description was contained in the teletype; and (c) whether defendant's physical characteristics matched those descriptions. In short, the record leaves us only a summary description of the crime committed and a vague assurance by the police (to the victim) that defendant matched an unspecified description of the perpetrator. This kind of evidence was held insufficient to establish probable cause as a matter of law in *People v Bouton* (50 NY2d 130), where the Court of Appeals stated: "Summary statements that the police had arrived at a conclusion that sufficient cause existed will not do. As on a warrant application, it is the responsibility of the neutral court, not the police, to determine whether the latter were justified in making the serious intrusion that the deprivation of another's liberty constitutes. For that purpose, the court must be presented with facts, not assurances. The record shows that only the latter were offered to the Judge in this case" (*id.,* at p 135). As further held in *People v Brodie* (87 AD2d 653): "Articulable facts concerning the defendant's clothes and characteristics and a sufficiently particular description of the person to be arrested

were necessary to evaluate the People's claim that the arrest met probable cause standards" (citations omitted). The majority, however, also attempts to sustain the lineup on an alternative basis, namely, that the evidence establishes that defendant was not arrested when his vehicle was stopped, but voluntarily came to the police station and submitted to the lineup *before* he was arrested. I am unable to understand how the majority can uphold the lineup by finding that it was preceded by a valid arrest on probable cause and at the same time by finding that no arrest was made until after the lineup. Moreover, the majority's no arrest theory is inconsistent with the suppression court's finding that the police "had probable cause to arrest the defendant", which would have been entirely irrelevant unless it referred to events occurring prior to the lineup procedure. It is also inconsistent with the evidence that when defendant was stopped on the street, he was given his *Miranda* warnings and his vehicle was impounded, and thereafter the police advised the victim to come to headquarters because defendant was "picked up". Since the lineup identification should have been suppressed, it was error for County Court to have permitted the prosecution to bolster the victim's in-court identification by introducing the earlier identification into evidence. However, the majority attempts to salvage defendant's conviction by making new findings that the victim's in-court identification had a basis independent of and was untainted by the prior lineup identification. Purely and simply, there is no proper evidentiary basis upon which that finding can be made. First, upon establishment of the illegality of the earlier identification, the burden was on the prosecution to prove, by clear and convincing evidence, *at the suppression hearing,* that any in-court identification would be untainted (*United States v Crews,* 445 US 463; *People v Rahming,* 26 NY2d 411, 416-417; *People v Ballott,* 20 NY2d 600, 606). The victim's testimony at the suppression hearing was entirely restricted to the circumstances of her lineup identification. *Not a scintilla of evidence appears in her testimony at the suppression hearing concerning any in-court identification or of any factors which would tend to establish that an in-court identification would have an independent basis.* This omission in the victim's testimony at the suppression hearing deprives this court of any evidentiary support whatsoever to make a finding that her in-court identification had an independent basis. In this respect, the instant case is indistinguishable from *People v Rahming* (26 NY2d 411, *supra*), where the Court of Appeals held that a similar omission of the necessary testimony by the victim at the suppression hearing was fatal error: "The last omission made it impossible for the hearing court to determine whether an in-court identification would have independent value" (*id.,* at p 417). The majority is unable to overcome the same omission at the suppression hearing here by referring to the victim's identification testimony at the trial or defendant's failure to object thereto. As further stated in *Rahming:* "The failure of defendant to object to the in-court identification is hardly a waiver, since he had made an appropriate pretrial motion to suppress. This motion preserves the objection, since no purpose would be served by renewing it on the trial" (*id.,* at p 417). Apart from this fatal gap in the proof at the suppression hearing, the evidence adduced at the trial itself was by no means clear and convincing or overwhelming to support the majority's determination of the independent basis of the identification. The incident happened shortly after midnight in a parking lot off New Scotland Avenue. The evidence discloses that the only source of illumination of the lot was the city street lamps on the adjoining roadways. Even if we were to assume that there may have been sufficient lighting for the victim to identify the man who ran near her and fell down before her at the initial encounter, the record certainly does not support the further inference that there was a similar

opportunity to observe the person who subsequently attacked her. The attack was from behind, the victim was dragged farther into the parking lot away from the street lights, and her eyeglasses were dislodged and broken. Clearly, here this evidence was far from clear and convincing to negate the serious possibility that the victim's positive identification of defendant in court was based upon having recognized him at the lineup as the person she encountered before the attack, or that the jury was influenced by the fact that she made a prompt identification at the lineup. Equally mandating reversal was the court's determination of the *Sandoval* motion in permitting the prosecution to cross-examine defendant on an assault underlying a prior youthful offender conviction and a prior conviction for sexual abuse. The following constitutes the court's *entire* ruling on the *Sandoval* motion as contained in the record: "He may inquire concerning the underlying acts on the premise that the two convictions in a short period of time indicate to this Court this defendant has placed his own self-interest above the laws of society and consequently would bear on credibility." *People v Williams* (56 NY2d 236) teaches that this was an insufficient exercise of the discretion required of a trial court in a *Sandoval* hearing, *as a matter of law*. Reyling on the *Sandoval* case itself (*People v Sandoval,* 34 NY2d 371, 374-375), the court in *Williams* re-emphasized that the determination of what prior crimes may be used as evidence to impeach an accused requires a *balancing* of the probative value of the evidence on a defendant's credibility against the various factors creating a risk of unfair prejudice from the impact of the evidence on the jury (*People v Williams,* 56 NY2d 236, 238-239, *supra*). As the previously quoted ruling in the instant case undeniably demonstrates, no such balancing was undertaken by County Court here. It held that defendant's prior convictions were admissible solely because, in showing defendant's self-interest, they bore on credibility, thereby totally disregarding the factors to be weighed on the other side of the scale. The following holding in *People v Williams* (56 NY2d 236, *supra*) is equally applicable here: "To the extent a past crime may indicate this willingness, it bears upon whether a defendant will place self-interest foremost again and lie on the witness stand. But the indication, no matter how strong, of the existence of such a tendency through past convictions does not obviate the need for the court to exercise its discretion and weigh other relevant factors such as the danger that the defendant may be convicted for his past criminal record rather than for the crime for which he is charged" (citation omitted) (*id.,* at p 240). The majority [pp 1066-1067] attempts to avoid the effect of the *Williams* case by holding that "defendant produced no proof to meet his burden in an effort to convince the trial court that the underlying facts of his convictions were such that * * * proof of his prior convictions should have been barred". The majority thus appears to be converting the pretrial hearing required under *Sandoval* from one where the court merely reviews the convictions and hears argument by opposing counsel into some kind of evidentiary hearing where a defendant *is required to submit some* unspecified "proof". I am at a loss to conceive of what "proof" was expected of defendant in the instant case. It seems self-evident to me that County Court had before it all of the facts necessary to make a prima facie showing of the possibility of prejudice if cross-examination concerning defendant's two prior criminal acts were permitted. The assault/youthful offender conviction had scant probative value on the issue of credibility. The likely inflammatory and otherwise prejudicial effect of bringing out defendant's prior sexual abuse conviction is even more clear, since the facts of the instant case were highly suggestive of a sexual motive for the criminal attack. No further "proof" was necessary to establish such possible prejudice. Indeed, the use of prior sex-crime convictions to attack a defendant's credibil-

ity in a sex-related case is a classic example of the need for the sensitive balancing of factors required under *Sandoval* and *Williams* (see, e.g., *People v Bennette,* 56 NY2d 142, 147). As in *Williams,* the demonstrable failure of County Court to consider any factor other than the bearing of the prior convictions on defendant's credibility establishes an absence of the exercise of discretion required under *Sandoval* and *Williams,* and reversal is therefore mandated. The judgment of conviction should be reversed, and the matter should be remitted for a further suppression hearing and for a new trial.