■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ADOLPH ASCH, Appellant. — Appeal from a judgment of the County Court of Chemung County (Danaher, Jr., J.), rendered May 11, 1983, upon a verdict convicting defendant of the crimes of burglary in the second degree and grand larceny in the third degree.

In February of 1982, defendant came to live with his sister and her husband at their Larchmont Road residence in the City of Elmira. Because of his failure to assist about the house and to control his alcohol problem, defendant was asked to leave and did so, moving into an apartment in early June, 1982. Defendant returned his key to the Larchmont home, but continued to visit his sister and her children.

The following month, he was invited by his sister and brother-in-law to spend a week with them at their cottage on Lake Waneta. After arriving there, defendant was asked to travel back to Elmira to gather up tools and other items inadvertently left behind. That defendant no longer had a key to the residence was overlooked; however, he gained entrance by means of a screwdriver borrowed from a neighbor and completed the errand.

On July 11, 1982, after being at the lake approximately one week, a disagreement arose regarding defendant's drinking, in the course of which the brother-in-law told defendant that he "didn't want to have another thing to do with him, and had no desire whatsoever for him to have anything to do with me period". The next morning, the brother-in-law drove defendant back to his Elmira apartment and then stopped by his own home to mow the lawn; when he left, the house was locked.

On the morning of July 14, 1982, defendant entered the Larchmont residence through a window. He then proceeded to invite two antique dealers in to purchase antiques contained therein; he represented to the dealers that his reason for selling was an upcoming divorce. One dealer purchased a marble-top commode from defendant for $200 and the other an ice chest for $100. Defendant then called the police and reported that someone had broken into the house.

William Yarrison, a friend of defendant, testified that at defendant's invitation he went to the Larchmont residence on July 14, 1982; that while there defendant told him to "play it cool"; that he heard defendant negotiate with the antique dealers; and that after the sales were consummated, he accompanied defendant to a nearby bar for drinks which defendant purchased.

A jury convicted defendant of burglary in the second degree and grand larceny in the third degree for his role in the July 14, 1982 incident. Of the diverse errors charged, a few admit of comment.

Initially we note that the evidence adduced at trial is legally sufficient to support the burglary conviction. The People established that defendant unlawfully entered his sister's residence without permission, privilege or license, and, without authorization, sold household articles which did not belong to him.

The contention that Yarrison was an accomplice as a matter of law with respect to the burglary and that it was error for the trial court not to so charge is readily answerable. Concededly, Yarrison silently and passively observed defendant's wrongful sale of the commode and ice chest and, after recognizing defendant's sister's guitar in a taxicab awaiting defendant and himself, admittedly took the guitar home for safekeeping. Even if Yarrison could have been chargeable with unlawfully receiving a stolen guitar, this does not render him an accomplice in the burglary since it is questionable whether he actively participated in the latter offense (see *People v Brooks,* 34 NY2d 475, 480). Inasmuch as the facts developed at trial regarding Yarrison's intent are not clear cut and his status as an accomplice inconclusive, the trial court properly left the factual issue of whether Yarrison was an accomplice to the jury (*People v Geoghegan,* 68 AD2d 279, 284-285, affd 51 NY2d 45).

Also questioned is the trial court's *Sandoval* ruling. The prosecution agreed not to cross-examine defendant regarding bad acts occurring prior to 1972 and as to any that were alcohol related, but successfully contended that it should be allowed to cross-examine concerning defendant's convictions in 1976 for petit larceny and two 1979 robberies. Although the robbery convictions had probative worth on the issue of defendant's credibility and were not unfairly prejudicial (see *People v Bennette,* 56 NY2d 142; *People v Dodt,* 92 AD2d 1063, revd on other grounds 61 NY2d 408), allowing the larceny conviction, which was so similar to the charge against defendant for grand larceny in the third degree, to be brought out was improper for all it

actually accomplished was to indicate a predisposition on defendant's part to steal (*People v Smith,* 60 AD2d 963). However, given the fact that the prosecutor was free to probe the two robbery convictions, this error was harmless. Furthermore, we are unpersuaded that it was due to this error alone that defendant chose not to testify.

Though we find no reversible error in the conduct of the trial, the court's classification of defendant as a predicate felon was inappropriate and resentencing is required. The Penal Law provides that a prior out-of-State conviction constitutes a predicate felony conviction where both the foreign jurisdiction and this State authorize a term of imprisonment in excess of one year (Penal Law, § 70.06, subd 1, par [b], cl [i]; see *People v Augle,* 87 AD2d 348, 349). Moreover, when, as here, the foreign conviction is based upon a guilty plea: "only the elements of the offense defined in the statute of the other jurisdiction can be considered (*People v Olah,* 300 NY 96, 98). The underlying acts or facts not so specified are irrelevant (*People v Martin,* 81 AD2d 765, 766)." (*People v Augle, supra,* p 349.)

The predicate felony relied upon by the sentencing court was a plea of guilty to robbery in the State of Indiana. The elements of that offense are as follows:

"A person who knowingly or intentionally takes property from another person or from the presence of another person:

"(1) By using or threatening the use of force on any person; or

"(2) By putting any person in fear" (Ind Code, § 35-42-5-1). It is the People's contention that this statute matched the New York felonies of robbery in the third degree, grand larceny in the third degree and extortion. We disagree.

The absence of the use of immediate or physical force distinguishes the Indiana offense from robbery in the third degree as defined by New York Law (see Penal Law, §§ 160.05, 160.00). And, because a taking of property from the *presence* of another satisfies the Indiana definition of robbery, that offense is incompatible with New York's felony of grand larceny in the third degree, which requires that the taking be from the *person* of another (Penal Law, § 155.30, subd 5; see, also, *People v Dotson,* 46 AD2d 690, 691). Finally, with respect to the crime of extortion, New York's Penal Law prescribes that the person delivering the extorted property be placed in fear (Penal Law, § 155.05, subd 2, par [e], cl [i]), while under Indiana's statute the person put in fear can be anyone. Inasmuch as the elements of the Indiana felony do not coincide with the elements of a felony in

New York, the Indiana conviction could not properly be considered a predicate felony for sentencing purposes (see *People v Gonzalez*, 61 NY2d 586, 589; *People v Burgos*, 97 AD2d 826).

Judgment modified, on the law, by vacating the sentence; matter remitted to the County Court of Chemung County for resentencing; and, as so modified, affirmed. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.