■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HARRY J. DAYTER, Appellant.—Yesawich, Jr., J. Appeal from a judgment of the County Court of Albany County (Clyne, J.), rendered February 24, 1984, upon a verdict convicting defendant of the crime of attempted rape in the first degree.

On the morning of June 9, 1983, defendant met Terri Gillis at a detoxification center in the City of Albany. Gillis spent

the remainder of the day drinking wine in Washington Park. Defendant joined her in the afternoon and both became intoxicated. In the evening, Gillis, by then alone, started back to the detoxification center when defendant suddenly grabbed her and pulled her into some bushes in the park. She was struck in the face, threatened and, while lying on her back on the ground, commanded to take off a boot. After one of her legs was removed from her pants, defendant got on top of her. Defendant remained fully clothed throughout the incident, which lasted approximately 20 minutes. Eventually, Gillis escaped, ran to a nearby street and stopped a car driven by one William Ward. Hysterical and carrying one boot, Gillis cried that she had been raped and had her life threatened; she repeated the name "Dayter" several times and described her assailant as having sandy hair and dressed in a blue denim jacket with lighter-colored trousers. Ward and the passenger in his car had Gillis remain where she was while they sought assistance. Almost immediately, they encountered a police car driven by Officer Edward Conroy and apprised the officer of the incident. As they proceeded to drive through the park, Ward and his passenger came upon a pedestrian from the rear, moving at a brisk pace, wearing a blue denim jacket and light trousers. As they slowly passed, the street light enabled them to observe the facial features of this person for 5 to 15 seconds.

In the meantime, Officer Conroy located Gillis, still hysterical, who told him that a man named Dayter was trying to kill her. Shortly after Conroy reported over the police radio that a white male, named Dayter and wearing a blue jacket, was the subject of a complaint in the park, two officers spotted defendant, who willingly returned with them to the park to clear up the complaint. There, defendant was subjected to two showups, first by Ward and his passenger, each of whom recognized defendant as the person they had seen earlier, and then by Gillis, who identified defendant as her attacker. Defendant was then arrested and read his *Miranda* rights, after which he readily acknowledged having sexual relations with Gillis. Upon leading the police to the site where the episode occurred, they found a letter with defendant's name on it, a headband defendant claimed was his, and a comb that Gillis identified at trial as being her own.

After being brought to the police station and again being apprised of his *Miranda* rights, defendant confessed that he had struck a woman in Washington Park that evening, had indeed had sexual intercourse with her in some bushes, and

had fled when she started to scream. The officer who transcribed the statement later testified that, although he believed that defendant had been drinking, he did not consider defendant drunk at the time he confessed. In fact, defendant read the confession and made a correction therein before signing it.

Defendant was indicted on a charge of rape in the first degree (Penal Law § 130.35 [1]) and, following a jury trial, was convicted of attempted rape in the first degree. Thereafter, defendant chose to represent himself at a persistent felony offender hearing, at which he was found to be a persistent felon and sentenced to an indeterminate term of imprisonment of 25 years to life.

We affirm. Of the various arguments advanced on defendant's behalf, several merit comment. Initially, defendant contends that the pretrial identification evidence and his confession were the products of an illegal detention and, therefore, should have been suppressed. "[T]he police have the right to stop and inquire as to the conduct of an individual whom they have reasonable suspicion to believe has committed a crime" (*Matter of Kwok T.*, 43 NY2d 213, 218; *accord, People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851). Here, the suppression hearing record discloses that, based on Gillis' complaint, the police suspected that a white male named "Dayter" wearing a blue denim jacket had recently perpetrated a crime in the park and that, shortly after hearing this report over the police radio, one of the officers who stopped defendant for questioning as he rapidly made his way out of the park knew defendant by name. We perceive no error in County Court's determination that the police could at that juncture properly stop defendant for questioning since, in doing so, the officers were acting on a reasonable suspicion.

Neither were the showups legally impermissible. The standard for determining whether an individual is in custody so as to require *Miranda* warnings is whether a reasonable man, innocent of any wrongdoing, would believe that his freedom had been restrained in any significant way (*Matter of Kwok T., supra,* pp 219-220). To straighten out the matter of Gillis' complaint, defendant had voluntarily accompanied the officers back to the park for the showups. There is no evidence that the police threatened, restrained or coerced defendant and, as a result, no cause to believe a reasonable person in defendant's position would have considered himself to be in custody. Defendant's arrest following the positive identification of him by Gillis was, therefore, lawful (*cf. People v Dodt*, 61 NY2d 408), and the denial of defendant's motion to suppress the

several oral and written statements voluntarily given by him subsequent to his arrest was clearly proper.

Moreover, with respect to the contention that the showups were in themselves unduly prejudicial and the resulting identifications tainted, we note that showups are tolerated "where the witness is shown the suspect within a relatively short time after the incident" (*People v Brnja*, 70 AD2d 17, 23, *affd* 50 NY2d 366). On this occasion, misidentification was highly unlikely as the victim had already identified defendant by name and the showup, conducted within 15 minutes after the alleged attack, was not so much an identification procedure as a confirmation that the person the police knew as Dayter was in fact the same person Gillis knew to be Dayter.

Defendant also challenges the sufficiency of the evidence corroborating his written confession. In his confession, defendant acknowledged that he struck the victim in the face and then engaged in sexual intercourse. That a rape was indeed attempted was corroborated by the victim's testimony; by a letter bearing defendant's name and a headband which defendant admitted to be his own, both found in the bushes where the attack occurred; and by the testimony of Ward, his passenger and the police officers, all of whom placed defendant near the scene of the crime, walking away hurriedly, just after the attack. This evidence not only corroborates defendant's confession, but more than amply confirms his guilt.

Although we find error in the County Court's *Sandoval* ruling, that error is insubstantial. Defendant's prior convictions for burglary in 1972, assault in 1967 and grand larceny in 1959 do manifest an inclination on his part to place his own interests above those of society, but those convictions are too remote to reflect defendant's honesty in January 1984, the time when defendant was tried. Since the prosecutor could nevertheless have quite properly questioned defendant regarding a 1981 burglary conviction and a 1979 conviction for assault and petit larceny, a new trial is not warranted (*see, People v Asch*, 107 AD2d 941, *lv denied* 64 NY2d 1131).

Nor was reversible error occasioned by either the admission of the testimony of police officers, who stated that they observed Gillis identify defendant at the showup, or as a consequence of County Court's laconic charge on the issue of identification. As already noted, defendant's identification was hardly a contested matter. Given that there was no substantial controversy on this issue, the improper bolstering testimony was harmless (*cf. People v Allsbrook*, 105 AD2d 467, *lv*

*denied* 64 NY2d 777), and the quantum of the evidence on the identification issue was such as to make an extended identification charge unnecessary.

A veteran of the criminal justice system, defendant elected to forego the services of the local Public Defender and to represent himself at the persistent felony offender hearing. Examination of County Court's colloquy with defendant at that time indicates that the waiver of counsel was knowingly and intelligently made. Furthermore, the court had a member of the Public Defender's office available for consultation with defendant throughout the hearing. Considering defendant's extensive criminal record and utter failure to display any tendency toward rehabilitation (the present conviction occurred only 16 days after defendant's release from incarceration for a prior felony), we are not disposed to disturb the sentence. The remaining arguments set forth in defendant's appellate counsel's brief and his *pro se* brief are both unpersuasive and undeserving of comment.

Judgment affirmed. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.