■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID W. DART, Appellant.—Yesawich Jr., J. Appeal from a judgment of the County Court of Otsego County (Mogavero, Jr., J.), rendered March 4, 1991, upon a verdict convicting defendant of the crime of murder in the second degree.

As a result of the fatal stabbing of Gillian Gibbons in a municipal parking garage in the City of Oneonta, Otsego County, between 1:30 and 2:00 P.M. on September 12, 1989, defendant was indicted for murder in the second degree in violation of Penal Law § 125.25. Following a jury trial, defendant was convicted and sentenced to an indeterminate period of incarceration of 25 years to life. Defendant appeals, claiming that his confession and physical evidence seized from his car and residence were the products of an illegal detention and should have been suppressed, that County Court abused its discretion when it restricted the time allowed counsel to question prospective jurors, and that the court's circumstantial evidence charge was objectionable to the point of warranting a reversal of his conviction and a new trial. We affirm.

Testimony elicited at the suppression hearing reveals that on the morning of September 14, 1989, a young woman advised the police that two days earlier, at about 1:15 P.M., she observed defendant, whom she knew because they had attended the same school, "hanging around" in the garage near the stairwell which led to the parking level where the victim's car was located. She also informed the police that when defendant was younger he had been implicated in a sexual assault involving a girl. Upon receiving that information, members of a joint homicide team comprised of State Troopers and Oneonta police officers initiated mobile surveillance of defendant's activities. When defendant, for no apparent reason, drove by the murder site on at least two occasions and after he had proceeded along State Route 28, several miles from the scene of the homicide, the surveillance team of State Police Senior Investigator Robert Courtright and Oneonta Police Officer Allen Taylor stopped defendant's vehicle for the purpose of questioning him. Given the officers' knowledge that a witness reported seeing defendant in the garage at approximately the time when the stabbing occurred and the fact that they had observed defendant unnecessarily drive by the crime scene several times that day, notwithstanding the contrary view held by defendant, we find these conditions led to a reasonable suspicion that defendant committed the crime and hence afforded the officers an adequate basis to stop defen-

dant's vehicle for the purpose of making further inquiry (see, People v Dayter, 112 AD2d 643, 645, lv denied 66 NY2d 614).

His car having been pulled over, defendant was interviewed for about 30 minutes in the police car. The officers then asked defendant to accompany them to the police station for further questioning, which he did. After about two hours at the station, and being confronted with the fact that he had been seen in the parking garage at about the time of the murder and that he had previously represented to the officers that he was at home some 30 miles away at the time, defendant broke down, orally confessed to the killing and gave the police a map showing the location of the murder weapon, where it was ultimately found. Pursuant to consent forms signed by defendant, police searched his car and apartment and found the knife sheath. It is this evidence, and the confession, which defendant argues should have been suppressed.

There is no doubt that once defendant confessed, probable cause for his arrest was present. He contends, however, that he was placed in custody before there was probable cause to do so, either when he entered the police vehicle or when he was transported to the police station for further questioning. We are unconvinced.

The officers testified that after they stopped defendant's vehicle, he voluntarily agreed to sit in the back seat of the two-door unmarked police car to be questioned, and that he later agreed to go with them to the police station for further questioning. Nothing in the record indicates that defendant refused to cooperate in any way, or that the officers proceeded in spite of resistance. No guns were drawn, defendant was not handcuffed, nor was he told that he was under arrest. Having been arrested several times before, defendant testified that each time he had been informed that he was under arrest. Thus, the record supports County Court's determination after the suppression hearing that the People carried their burden of proving that defendant assented to the questioning, and that a reasonable person, innocent of any crime, would not have believed that he was under arrest under the circumstances (see, People v Yukl, 25 NY2d 585, 589, cert denied 400 US 851).

We also reject defendant's assertion that the manner in which the suppression hearing was conducted prejudiced him. He maintains that he was greatly disadvantaged because one of the testifying officers was permitted to confer with the District Attorney during a customary break in the proceed-

ings, yet defendant was denied the opportunity to confer with counsel during his testimony. It is well established that a defendant's right to counsel does not require that he be given the opportunity to interrupt his testimony to confer with counsel; rather, it is within the trial court's discretion to grant or refuse permission to any witness to talk with counsel while testifying (see, People v Enrique, 80 NY2d 869; People v Narayan, 58 NY2d 904, 906). Furthermore, the officer whose testimony was interrupted by the break period testified that although he did engage in a discussion with the prosecutor, no one reminded him of any of the facts to which he later testified. On this record, it cannot be said that defendant was harmed by the consultation.

As for the time constraints placed by County Court on the jury voir dire—individual counsel were allotted 15 minutes to question each panel of prospective jurors—it is worth noting that absent a showing that the actual process used was unfair or that defendant was prejudiced thereby, a trial court has broad discretion in this often time-consuming aspect of criminal jury trials (see, People v Pepper, 59 NY2d 353, 358-359). A reasonable time limit, such as the one imposed here, has repeatedly been upheld as an acceptable exercise of discretion (see, People v Jean, 75 NY2d 744, 745; People v Moore, 155 AD2d 725, 726, lv denied 75 NY2d 773; People v Garrow, 151 AD2d 877, lv denied 74 NY2d 948).

The process employed was not unfair. Prior to their own individual examination of the jurors, trial counsel were given the opportunity to review written juror questionnaires and to submit questions to County Court to be asked by it during its preliminary interrogation. No such questions were submitted by the defense. Moreover, a reading of the voir dire transcript discloses that the court's examination was extensive, and that the court displayed no reluctance to excuse jurors when possible bias was uncovered. Most importantly, there is no evidence that the jurors chosen were not impartial (see, People v Pepper, supra, at 359).

Also without merit is the fault defendant ascribes to County Court's instructions to the jury. The court's charge on circumstantial evidence presented a fair and balanced interpretation of the law to be applied, including the standard of reasonable doubt (see, People v Adams, 69 NY2d 805). Defendant's other objections to the charge were not raised below and therefore not preserved for appeal, and we find no basis to disturb the judgment of conviction in the interest of justice.

Mikoll, J. P., Levine, Crew III and Harvey, JJ., concur. Ordered that the judgment is affirmed.