Keating, J.
Daniel W. was arrested by the police on May 19, 1966 in connection with the theft of a 1963 Chevrolet. After some questioning he identified the appellant, Rodney P., then 16 years old, as his accomplice. Since he knew where Rodney lived (but not the precise address) Daniel directed two detectives to Rodney’s home. They arrived there at about 8:00 p.m. Detective Daily left Daniel in the car with his fellow detective and approached three boys standing by the side of the defendant’s house. He asked which of the boys was Rodney. The appellant identified himself, whereupon the detective asked the other two boys if they would leave, which they did.
The detective questioned Rodney about being with Daniel W. that afternoon and taking the car. Rodney admitted to Detective Dally that he had taken the car with Daniel W. This interrogation lasted three to four minutes. The detective and Rodney next went inside the house and the officer spoke to Rodney’s father over the telephone regarding his son’s arrest. *3 Rodney was taken to police headquarters where the sum and substance of his conversation with the ’detective was reduced to writing and signed by him. He was not advised at any time of his rights either with regard to the assistance of counsel or of his right to remain silent.
Subsequently Rodney was arraigned and pled not guilty to the charge of grand larceny in the first degree. Thereafter he was approved for youthful offender treatment. Upon his plea of guilty, Rodney was adjudicated a youthful offender and received a three-year suspended sentence.
Prior to the plea, a hearing was held upon a motion to suppress the oral admissions and the written statement. The court granted the motion as to the written statement on the ground that the appellant had not been warned of his rights as required by Miranda v. Arizona (384 U. S. 436 [1966]). The court, finding that the warnings were not required during the brief interrogation at Rodney’s home, refused to suppress the oral admissions.
The appellant’s conviction was affirmed by the Appellate Division (Second Department) with one Justice dissenting. The defendant appeals to this court by permission of an Associate Justice of the Appellate Division.
The single ground urged for reversal on this appeal is that the oral admissions made to the police officer were unconstitutionally obtained and should have been suppressed.[1]
This case presents a problem raised by Miranda v. Arizona {supra)—the problem of defining precisely the circumstances and conditions in which the police are required to advise an individual of his constitutional rights before proceeding with interrogation.
The Supreme Court held in Miranda that a person who is taken into custody or deprived of his freedom in any significant way must be advised that he is not obligated to answer any questions; that, if he does speak, anything he says may be used against him in court; that he is entitled to the assistance of counsel prior to and during the questioning, and that, if he *4 desires counsel and is unable to retain one, counsel will be assigned to Mm.
That such warnings must be given after a person is formally arrested and physically detained is clear. The problem arises when a person is not formally arrested and taken into police custody; where, as in the present case, he is questioned briefly at his home by a policeman who, it is reasonably clear, intends to arrest him but who has not done so at the time of the questioning.
The determination of this problem cannot be made in a vacuum but must instead be based upon a careful examination of the holding of Miranda, the purpose of the Supreme Court in requiring the four-fold warning and the evil which the court resolved to eradicate.
In Miranda, the Supreme Court commenced its analysis of the question of police interrogation by stating that ‘ ‘ essential ’ ’ to the determination of the issues raised in the case was “ [a]n understanding of the nature and setting of this in-custody interrogation ” (384 U. S., supra, p. 445).
The court noted that in the recent past incommunicado interrogation was marked by physical beatings and brutality and that such practices were not unknown even today. (See, e.g., People v. Portelli, 15 N" Y 2d 235 [1965].) The court observed that “Unless a proper limitation upon custodial interrogation is achieved—such as these decisions [in Miranda and the others decided therewith] will advance — there can be no assurance that practices of this nature will be eradicated in the foreseeable future ” (384 U. S., supra, p. 447).
The court went on to stress that even the more restrained modern practice is predicated upon psychological coercion. The court quoted from a police manual describing the tactics to be employed: “ ‘ If at all practicable, the interrogation should take place in the investigator’s office or at least in a room of his own choice. The subject should be deprived of every psychological advantage. In Ms own home he may be confident, indignant, or recalcitrant. He is more keenly aware of his rights and more reluctant to tell of his indiscretions or criminal behavior within the walls of his home. Moreover his family and other friends are nearby, their presence lending moral support. In his own office, the investigator possesses all the advantages. The *5 atmosphere suggests the invincibility of the forces of law ’ ” (384 U. S., supra, p. 449).
After reviewing in considerable detail the various police tactics designed to wear down the will of the individual, the Chief Justice, writing for the court, examined the circumstances under which Miranda and the defendants in the other cases were detained and interrogated in police stations and concluded : “ It is obvious that such an interrogation environment is created for no purpose other than to subjugate the individual to the will of his examiner. The atmosphere carries its own badge of intimidation. To be sure, this is not physical intimidation, but it is equally destructive of human dignity. The current practice of incommunicado interrogation is at odds with one of our Nation’s most cherished principles — that the individual may not be compelled to incriminate himself. Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice ” (384 U. S., supra, pp. 457-458; emphasis added).
It is in this context that the Supreme Court formulated the four-fold warning. As the Chief Justice wrote (p. 467): “ In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.”
Most recently the Supreme Court had occasion to discuss the purpose of the four-fold warning again. After noting that a necessary element of any claim predicated upon a violation of the privilege against compulsory self incrimination is still “ some kind of compulsion ”, the court stated that its decision in Miranda was ‘ ‘ predicated * * * upon the conclusion ‘ that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual’s will to resist and compel him to speak where he would not otherwise do so freely ’ ”. (Hoffa v. United States, 385 U. S. 293, 304.)
No one can read the Supreme Court’s explanation of the purpose of the warnings and not conclude that an examination of the circumstances and the atmosphere in which the interroga *6 tion takes place is essential to a determination of whether a person, who has not actually been physically detained or formally placed under arrest, has been deprived of his freedom in any significant way so as to require the police to give the necessary warnings.
It is true, as some have suggested (see Sobel, The New Confession Standards, 57-63), that when an examination of the circumstances surrounding the interrogation, i.e., the existence of probable cause to arrest, indicates that the officer intends to make an arrest, the individual is no longer free to go as he chooses and may, therefore, technically be deemed to be in custody. That does not mean, however, that any questioning which may then take place must be preceded by the Miranda warnings regardless of the individual’s awareness of the police officer’s intent.
A recent decision of the Supreme Court of Pennsylvania (Commonwealth v. Jefferson, 423 Pa. 541 [1967]) illustrates what we regard to be the rather undesirable results which may follow from a holding that, any time the evidence indicates an intent to arrest, the Miranda warnings must be given.
The defendant had been convicted of murder growing out of a stabbing which had taken place on a public street. Shortly after the incident a police officer who was on patrol proceeded to the hospital to investigate. In the hospital accident ward he found several persons, including the defendant. In answer to his inquiry and to questions of a second police officer, who arrived a short time later, the defendant made certain inculpatory statements without first being warned that she had the right to remain silent and to have the assistance of counsel during the questioning.
Upon entering the hospital accident ward, the first officer asked: “ What happened? ” And the defendant replied: “ There was a fight. * * * They jumped me and I stabbed them.”
The second officer, upon his arrival at the hospital, received a short briefing from the first officer in the hallway of the hospital and then entered the accident ward. He asked, “ Who did the stabbing? ” The defendant raised her hand and said, “ I did. I think I got the wrong one.” In response to further questions, the defendant detailed the occurrence and its background.
*7 The trial of the defendant had taken place after the decision of the Supreme Court in Escobedo v. Illinois (378 U. S. 478) and prior to the decision in Miranda. The Pennsylvania Supreme Court was determining whether the investigation had focused on the accused and, hence, whether the adversary proceedings had begun for the purpose of applying the Escobedo decision.
In Miranda, the Supreme Court noted that what it meant in Escobedo, when it spoke of an investigation which had focused on the accused, was ‘ ‘ questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way ” (384 U. S., supra, p. 444). This is the same standard necessary for the determination of whether the Miranda warnings must be given.
Thus the Supreme Court of Pennsylvania was faced with essentially the same problem we are faced with in the case at bar. The court held that the statement made to the first officer was admissible, while the statement made to the second officer, under exactly the same circumstances, was inadmissible. The court reasoned as follows (423 Pa., supra, pp. 544-546):
“ The Commonwealth * * * earnestly argued that the point had not [here] been reached where * * * warning [of the right to remain silent] was required. Pa other words, it is urged that even at the time the statements were made to [the second officer], the adversary system had not yet begun to operate, and the police were still engaged in a general questioning of citizens to determine just what did happen.
“ [This] is certainly correct so far as it relates to the statements [made to the first officer]. * * * His inquiry * * * was directed to all those present in the accident ward, and to no one in particular. [The defendant’s] response was truly a volunteered, spontaneous, freely-made utterance to general questioning of citizens in the police fact-finding process. The evidentiary use of such volunteered statements is in no way affected by either Miranda or Escobedo. * * *
‘ ‘ However, when the statements were made in response to questions of [the second officer], a new situation had arisen. As of then, [the second officer] knew there had been a stabbing and [that the defendant] was, by her own admission, the perpetrator. *8 She should immediately have been advised of her right to remain silent before further questioning ensued, and such warning not having been given renders her statements made from that point on constitutionally inadmissible. * * *
“ After [the defendant’s] admissions to [the first officer], the investigation had certainly begun to focus on her as the accused; and, she was certainly not free to leave and at least technically [was] [1] in custody. ’ Custodial interrogation is not limited to police station questioning or that occurring after a formal arrest.”
This reasoning overlooks the language and purpose of the Miranda warnings which is to protect the individual’s freedom of choice — to answer or not answer—in situations which are inherently coercive. In so doing the Pennsylvania court reached the rather anomalous result of rejecting an admission made under the same circumstances and conditions as the admissions it accepted merely because, as a result of the first questioning, the police would not have permitted her to leave, had she attempted to do so.
A far better approach, we believe, has been taken by the California courts. In People v. Hazel (252 Cal. App. 2d 412) the defendant was convicted of receiving stolen property—a musical instrument. The day after the theft the defendant entered a pawnshop and attempted to pawn the instrument. While the defendant negotiated with one of the proprietors, another became suspicious and left the store to summon the police. A police inspector arrived on the premises and, in the questioning which ensued, the officer obtained certain inculpatory statements without giving the Miranda warnings.
The District Court of Appeal, accepting for the sake of its decision the defendant’s contention that, at the time the officer entered the store and commenced his interrogation, the officer intended to arrest him, nevertheless rejected the contention that the Miranda warnings should have been given: “ [C]ustody occurs if a suspect is led to believe, as a reasonable person, that he is being deprived or restricted of his freedom of action or movement under pressure of official authority * * * [T]he custody requirement of Miranda does not depend on the subjective intent of the law enforcement officer-interrogator but *9 upon whether the subject is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is [significantly] restricted by such interrogation.”
The court relied for its decision on an opinion of the California Supreme Court in People v. Arnold (66 Cal. 2d 438). In that case the California court like the Pennsylvania court was defining custodial interrogation for the purpose of applying the Escobedo rule. As noted earlier, the definition of custodial interrogation for both Escobedo and Miranda is the same and the court so held (66 Cal. 2d 438, 447-448). The following-language of the court is, therefore, instructive:
“ The vice of the custodial interrogation * * * [lies] in the psychological coercion implicit in interrogation in the isolated chamber from which the suspect may reasonably believe he cannot leave. In such circumstances the person detained or arrested finds himself completely and suddenly cut off from freedom of movement. An involuntary immobilization by law enforcement officers dramatizes the fact that the individual stands suspected or accused of crime. Lacking knowledge of his constitutional rights, he may feel that he can extricate himself from the situation only by submitting to interrogation. He may reasonably believe that if he attempts to leave the interrogation chamber the authorities will impose immediate detention. * * * Although in this pre-Miranda case we are not constitutionally compelled to accept Miranda standards, we find the above reasoning entirely persuasive in defining custody as that term is used in Escobedo and Dorado. Accordingly, we adopt the definition of the United States Supreme Court of in-custody interrogation: ‘ By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ * * * We hold that custody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived.”
This is the test which we hold to be the most reasonable. It gives effect to the purpose of the Miranda rules; it is not solely dependent either on the self-serving declarations of the police officers or the defendant nor does it place upon the police the *10 burden of anticipating the frailties or idiosyncracies of every person whom they question. (See, also, Gaudio v. State, 1 Md. App. 455, 230 A. 2d 700 [Md. Ct. of Spec. App., 1967]; Williams v. United States, 381 F. 2d 20 [9th Cir., 1967].)[2]
Applying the rule to the facts in the case at bar, we conclude that the Miranda warnings need not have been given. The police drove up to the front of the defendant’s home, a private dwelling. The defendant and two friends were on the side steps of the house. One of the detectives got out of the car, approached the defendant and, quite properly, asked to speak to him privately regarding a matter which might prove to be embarrassing. The defendant was not told that he was under arrest when he responded to the questions outside his home — “in [his own] back yard ” to use his counsel’s words—nor was he physically restrained in any way. The fact that he might have been restrained, had he attempted to leave, is not controlling. (People v. Hazel, supra; People v. Gaudio, supra; Williams v. United States, supra.) Nor can it be said that the defendant was led “as a reasonable person” to believe that his freedom was restrained in any significant way.
There is no evidence that the police officer had his gun drawn (see, e.g., State v. Intogna, 101 Ariz. 275) or that the defendant knew or was advised that his accomplice was already in custody and had implicated him. The police officer testified that he merely questioned Rodney ‘ ‘ about being with one Daniel W * * * that afternoon and taking a car from around the vicinity of the New Hyde Park * * * [Rodney] admitted to me at this time that he did take this car with one Daniel W * * * [The] conversation took * * * [n]o more than three or four minutes.”[3]
This kind of questioning is little different from routine police investigation of crimes or suspicious conduct at a person’s *11 home, his place of business or on the street'—the kind of questioning which has uniformly been held not to require the Miranda warnings. (See Miranda v. Arizona, 384 U. S. 436, 477-478, supra; State v. Oxentine, 270 N. C. 412 [1967]; United States v. Kuntz, 265 F. Supp. 543 [N. D. N. Y., 1967]; State v. Corrigan, 4 Conn. Cir. 190, 228 A. 2d 568 [Conn. Cir. Ct., 1967]; Evans v. United States, 377 F. 2d 535 [5th Cir., 1967]; Williams v. United States, supra; cf. Tate v. State, 413 S. W. 2d 366 [Tenn., 1967]; State v. Drew, 425 P. 2d 349 [Wash., 1967]).
The defendant argues, however, that the questioning by the police officer—without any more — should be deemed to have constituted a significant restraint on his freedom.
There are, it is true, few people who would feel free to walk away from a police officer who stopped to question them. Some, hopefully most, would feel restrained out of respect for an officer of the law who is, after all, their servant and protector. Others, unfortunately, would feel restrained by fear of a police officer.[4] But it is not any and every restraint—less actual custody or physical detention—which requires that warnings be given before questions are asked, only a significant restraint. And since, as a practical matter, a person’s freedom is restrained or it is not, and he either feels free or does not, we believe that, in prefacing the word “ restraint” with the adjective “ significant ”, the Supreme Court intended that the warnings be given when the questioning takes place under circumstances which are likely to affect substantially the individual’s “ will to resist and compel him to speak where he would not otherwise do so freely. ’ ’ (Miranda v. Arizona, supra; Hoffa v. United States, supra). Such circumstances were not present here.
The judgment appealed from should be affirmed.

. The questioning of the defendant took place prior to the Supreme Court decision in Miranda v. Arizona {supra). The defendant is, however, entitled to have the admissibility of his confession determined in accordance with the standards set down in that decision because his trial had not yet taken place., {Johnson v. New Jersey, 384 U. S. 719.)

. The problem we are presented with here has provoked a considerable amount of comment. See generally, Kamisar, A Dissent From The Miranda Dissents: Some Comments on the “ New ” Fifth Amendment and the “ Old ” Voluntariness Test, 65 Mich. Law Rev. 59; Rothblatt & Pitler, Police Interrogation: Warnings and Waivers — Where Do We Go From Here? 42 Notre Dame Law. 477; notes, 33 Brooklyn L. Rev. 347 ; 67 Col. L. Rev. 130; 36 Fordham L. Rev. 141.

. The defendant did not testify at the suppression hearing.

. There is nothing in the record to indicate what the defendant’s feelings were at the time he made the admissions.