Robert Duane BEASON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15019.

Court of Criminal Appeals of Oklahoma.

April 9, 1969.

Tom H. Morford, Alva, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., Grayson Van Horn, Legal Intern, for defendant in error.

BUSSEY, Judge.

Robert Duane Beason, hereinafter referred to as defendant, was charged, tried, and convicted of the crime of Grand Larceny After Former Conviction of a Felony, in the District Court of Woods County; his punishment was fixed at six years imprisonment in the State Penitentiary and from said judgment and sentence he appeals.

On appeal it is argued that the trial court erred in (1) admitting the confession of the defendant; and (2) that the court compounded this error by admitting evidence obtained as a result of an illegal confession.

The facts giving rise to these assignments of error, as reflected in the record, are that Woods County was engaged in road construction located about seven and one-half miles southeast of Freedom on the Waynoka and Freedom cut-across road; that a number of the county tools were stored in a tool box when work was finished on the 26th day of February, 1968; these tools were missing the following morning when county employees reported to work and Sheriff White of Woods County was notified. The sheriff proceeded to the location of the theft, obtained a description of the missing tools and followed tire marks from the scene to a nearby farmhouse where he obtained a description of the automobile and its occupants. On the evening of the 27th day of February, 1968, Sheriff White proceeded to the Alva Body and Fender Shop where defendant was employed. In the record, at page 37, the following appears:

"A. [Sheriff White] Well, I drove up there. I got out to go into the body and fender shop and I met Bobby coming out, just right at the door. We met at the door and we just spoke and he went on out to his car. I went in to talk to Raymond Rhodes and I did talk to Raymond and I told Raymond that I was going out and talk to Bobby. He was working—had the hood up on his car and doing something to the motor. I said, 'I want to talk to Bobby,' and I went out and I said, 'How are you, Bobby?' And he said, 'All right.' And I said, 'Bobby, I think you and I should have

a little talk, but, before we talk, I want to advise you of your rights.' And I said, 'You have a right to remain silent and what you say might and could be used and would be used against you, and you have a right to an attorney. You have a right to have one with you while you are being questioned and, if you don't have the means and can't hire an attorney or lawyer, why one will be appointed.' And so, after verbally advising him of his rights, I handed him a card[1] that I carry and I said, 'Bobby, you understand the English language,' so I just handed him this card and he read it. And I said, 'Read it.' He read it and he just—oh, acted like he was going to hand it back to me, and I said, 'Read the other side, too, Bobby,' and he turned it over and read the other side and handed it back to me.

Q. Did he ask you any questions about it?

A. Not about the—he never asked me anything about the card. Now I said, 'We have got a matter that we should visit about, Bobby, and—'

Q. [Interposing] Let me go back over this again before we go any farther. Do you know that he understood everything you told him?

A. Yes. Yes, I do."

\* \* \* \* \* \*

"Q. O.K. After you gave this warning to him now tell me what happened.

A. I asked him where he wanted to talk, in his car, my car or over at the office, or wherever he wanted to. It was all right with me. I gave him his choice. Well, he said, 'Elvin, am I under arrest?' And I said, 'Bobby, not at this time.' He said, 'Well, why don't we go over to your office then? If you will let me drive my car over.' And I said, 'That would be all right. Drive your car over.' So we came over to my office."

At page 44 of the case made, the following appears:

"Q. Was Vernie Hackney there at that time?

A. Yes, but I'm a little ahead of my story here, Mr. Morford, because Bobby, in our conversation, said that he would go get the tools; that he had the tools and he would go get them, and he did. And I said, 'Well, maybe I ought to go with you, Bobby,' and he said, 'Well, I would rather go by myself.' He said, 'I sure will come back with them.' And I said, 'I'm going to let you do it, Bobby. I think you will.' And he did. And, when he came back, he came back with the tools in just a matter of a short time and brought them in and dumped them out there on the floor and I said, 'Is that all of them? Is that all of them, Bobby?' And he said, 'That's every one.' No, he said, 'That's all that I got out there. That's every one.' That's the way he put it. 'That's all that I got out there and that's every one of them.' Then we went back in the office and talked and then decided to call Mr. Hackney and have him come in and Bobby said he would be there. He wanted to know if he could go and I said, 'You can if you will be back here

---

1. [Front side of card]
MIRANDA WARNING
1. You have the right to remain silent.
2. Anything you say can and will be used against you in a court of law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one.

[Back side of card]
WAIVER
After the warning and in order to secure a waiver, the following questions should be asked and an affirmative reply secured to each question.
1. Do you understand each of these rights I have explained to you?
2. Having these rights in mind, do you wish to talk to us now?
    DANIEL "DAN" HIGGINS
District Attorney of Placer County

at 8:00 o'clock.' He said, 'I will,' and was."

■ Commissioner Hackney and the defendant appeared in the sheriff's office at 8:00, and there was some discussion between them relative to whether charges would be filed, which is not germane to the issues under consideration. We are of the opinion that the defendant's contention that the admission into evidence of defendant's confession under the rule enunciated in Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is without merit for the reason that it is abundantly clear, in the instant case, that the questioning of the defendant by the sheriff in his office was not a custodial interrogation within the meaning of *Miranda*. A crime had been committed and it was the duty of the sheriff to investigate the commission of that crime. The sheriff had obtained a description of the car and the occupants of that car observed near the scene of the crime; he proceeded to the place of employment of the defendant, a known ex-convict, orally advised him of his rights and then allowed him to read the Miranda Warning card (a copy of the routine warning provided for local officers by the F.B.I.); when specifically asked by the defendant if he (the defendant) was under arrest, the sheriff replied that he was not. The site of questioning was selected and agreed to by the defendant, his confession was freely and voluntarily made, without promise of benefit or threats of coercion, and after having admitted his possession of the tools, he volunteered to produce them and was allowed to do so, unaccompanied by the sheriff. After producing the tools he was again allowed to leave the sheriff's office and return some time later without ever having been placed in custody. We must, therefore, conclude that this assignment of error is wholly without merit. For cases holding that Miranda v. Arizona, supra, has no application in the admission of confessions obtained by officers from defendants in non-custodial interrogations, see the following: People of the State of New York v. Rodney P. (anonymous), 21 N.Y. 2d 1, 286 N.Y.S.2d 225, 233 N.E.2d 255; David v. State, 1 Md.App. 666, 232 A.2d 553; Berger v. District Court (Montana), 432 P.2d 93; and Davidson v. United States, 10 Cir., 371 F.2d 994.

■ Even if it were determined that the confession here involved was obtained during custodial interrogation, we are of the opinion that the court properly admitted the same, for we adopt the view expressed by the 4th Circuit in United States v. Hayes, 385 F.2d 375. This case was strikingly similar on its facts to the instant case, for the appellant appealed his conviction on the sole contention that certain incriminating statements elicited from him and used against him at trial were obtained in contravention of his constitutional rights as enunciated in the *Miranda* decision. Defendant was informed of all of his constitutional rights; however, after being informed, he was not asked whether he understood them or whether he desired counsel. This was the main point of contention of his appeal. Defendant asserted as a matter of law that in the absence of an express statement he could not have made an intelligent, knowing and voluntary waiver of his rights. The court, in discussing this contention, stated:

"[Defendant] is correct in his position that a heavy burden rests upon the government to prove that a person in custody 'knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.'" However, the court further stated, "just as the mere signing of a boilerplate statement to the effect that a defendant is knowingly waiving his rights will not discharge the government's burden, so the mere absence of such a statement will not preclude as a matter of law the possibility of an effective waiver." * * * "Appellant (admitted) the sufficiency of the warnings * * *." "Appellant * * * does not allege any physical or psychological coercion." "Against these telling circumstances the

appellant offered no evidence. He produced no witnesses putting in question his apparent intellectual endowments. Moreover, it is noteworthy that at no stage in the proceedings has the appellant ever denied that he understood the warnings given him, and while a defendant does not have the obligation to testify himself or to offer testimony, a court cannot supply evidence that is lacking."

The court affirmed the conviction.

In the instant case it is also urged that the confession was made to the sheriff because he was a "father" confessor type. The sole reference to this contention appears in the record at page 122 of the case made, where the following question was asked by counsel for defense and answer received:

"Q. Mr. White, at the time you brought Bobby in and he gave you this confession, you acted as a father confessor to him, did you not? Didn't you encourage him?

A. Mr. Morford, I never did mistreat the boy in my life and I don't intend to. I don't intend to misuse him in any way."

It is clear that the above does not support the defendant's present contention and that the contention is, therefore, without merit.

Having concluded that the confession was properly obtained and admitted into evidence, the defendant's second contention that evidence obtained as a result of that confession was improperly admitted is also without merit, for it is axiomatic that when a confession is properly obtained and admitted into evidence against the accused, evidence obtained as a result of that confession is likewise admissible.

For all of the reasons above set forth, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby,

Affirmed.

BRETT, P. J., and NIX, J., concur.