■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v J. DOROTHY WILLIAMSON, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered February 3, 1978, convicting her of attempted murder in the second degree, upon a jury verdict, and sentencing her to a term of imprisonment of 5 to 15 years. Judgment modified, as a matter of discretion in the interest of justice, by reducing the sentence to a term of imprisonment with a minimum of three years and a maximum of nine years. As so modified, judgment affirmed. In our view, the sentence imposed was excessive to the extent indicated herein. Suozzi, J. P., Cohalan and Martuscello, JJ., concur.

Lazer, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: This appeal presents another factual variation relative to the recurring problem of defining the circumstances and conditions under which the police are required to advise individuals of their constitutional rights to remain silent and to counsel before proceeding with interrogation. After being admitted into defendant's living room by her son, one of the three police officers present told her that he had been informed by witnesses that she had had an altercation with and stabbed Patricia Cannon. He then asked the defendant whether, in fact, she had had an altercation with Patricia Cannon and told her that if she had the three officers would place her under arrest. The defendant declared that she was the one who had called the police and that the police officers had a lot of nerve to place her under arrest. According to one officer's testimony, she

then blurted out that "Yeah, that she had stabbed Patricia Cannon, and she was glad. She hoped she died." At this point, the officer stated that he would have to place defendant under arrest and informed her of her *Miranda* rights. She made no further statements after she was told her rights. After denial of a motion to suppress her statement, defendant was tried and convicted of attempted murder in the second degree and was sentenced to a term of imprisonment of 5 to 15 years. *Miranda v Arizona* (384 US 436) established the rule that a person may not be interrogated when taken into custody or otherwise deprived of his freedom without first being advised of his constitutional rights, but the parameters of the rule remain the subject of continuous definition and redefinition. In *People v Rodney P. (Anonymous)* (21 NY2d 1), the Court of Appeals looked to the circumstances and atmosphere surrounding the interrogations to determine whether an individual was in custody. Quoting from *People v Hazel* (252 Cal App 2d 412), the court declared that " '[t]he custody requirement of *Miranda* [depends] upon whether the subject is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is [significantly] restricted by such interrogation.' " *(People v Rodney P., supra,* pp 8-9 [last set of brackets by the court].) Subsequently, in *People v Yukl* (25 NY2d 585, 589, cert den 400 US 851), the "test" of custody was enunciated to be "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position." In *People v Paulin* (25 NY2d 445, 449), the Court of Appeals dealt with the issue of interrogation at the defendant's home, declaring that "the questioning of a defendant in her own home by police officers is not, without more, sufficient to conclude that the interrogation was custodial". The court went on to decide that Paulin's questioning was custodial interrogation due to three additional significant circumstances: (1) the body of her deceased husband was found in a guest room closet; (2) it was in a decayed condition; and (3) it had been discovered because of the stench. The court determined that these circumstances—all indicative of potential guilt on the part of the defendant and of which she was aware—combined with the presence of a police officer in the home, would lead a reasonable person, innocent of any crime, to conclude that her freedom of action had been deprived and that she was in custody. In *People v Cesare* (55 AD2d 959), the circumstances of a police interrogation were custodial when defendant permitted four police officers to enter his apartment and one detective twice asked defendant, "Where is the gun?" The accusation implicit in the *Cesare* question—like the accusation in the instant case—combined with the presence of the officers in the home sufficed to constitute circumstances which made the interrogation custodial. Here, the presence of three police officers in defendant's home was accompanied by two additional significant circumstances: (1) upon confronting the defendant, one of the three police officers immediately told her that witnesses had informed him that she had stabbed Patricia Cannon; and (2) after asking defendant if she had had an altercation with Cannon—and before she answered—the police officer informed her that she would be arrested if she had the altercation. It is difficult to conceive how these accusations, made by one of three policemen in defendant's home, would not lead an innocent reasonable person to believe that her freedom of action was significantly limited. Consequently, the interrogation was custodial. Nevertheless, the People argue that the opinion in *People v Rodney P.* (21 NY2d 1, *supra),* mandates a contrary conclusion. In *Rodney,* a police officer approached three boys standing by the side of the defendant's house and asked to speak to the defendant

privately. The policeman then questioned the defendant for three to four minutes about his conduct that afternoon without informing him that an accomplice already in custody had implicated him in the commission of a crime. *Rodney,* in which the suppression motion was denied, differs from the current case in three significant respects: (1) the questioning took place outdoors and not within the confines of defendant's living room; (2) the defendant was unaware of the fact that he had already been implicated by a witness; and (3) the police officer did not tell the defendant that he would arrest him if he had taken part in an event in which he had already been implicated. The *Rodney* circumstances do not impel the conclusion that an innocent reasonable person would believe that his freedom of action had been significantly restricted. Because I believe that the instant defendant's statement should have been suppressed, I dissent and vote to reverse the judgment and remand for a new trial.