**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Albert Ray MACKLIN; Earnestine Mack, Defendants–Appellees.**

**No. 89–5807.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 26, 1990.
Decided April 12, 1990.

W. Hickman Ewing, Jr., U.S. Atty., Tony R. Arvin, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Memphis, Tenn., for U.S.

Margaret Beth Brooks (argued), Clifton Harviel, Fed. Public Defender (argued), Memphis, Tenn., for defendants-appellees.

Before BOGGS and NORRIS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

BOGGS, Circuit Judge.

The United States appeals the district court's order suppressing the signed confessions of the two defendants in this case, Albert Ray Macklin and Earnestine Mack. Both defendants were charged with forging the endorsement of the payee on a United States Treasury check, in violation of 18 U.S.C. § 510(a)(1). Both defendants are considered mildly retarded. The district court concluded that their disabilities incapacitated them from making truly voluntary statements, in the absence of their receiving and comprehending their *Miranda* rights. The court also held that the confessions should not have been made without counsel and therefore granted the defendants' motions to suppress. We hold that the confessions were not made in violation of any recognized constitutional right, and we reverse.

I

On August 24, 1987, Special Agents Kennedy and Barnett of the United States Secret Service went to the home of the defendants at 685 Hastings Street in Memphis, Tennessee. The defendants had become the chief suspects in the investigation of a forged endorsement on a United States Treasury check. The agents first found Macklin in front of the house. They asked him if he would give them a handwriting sample, which he did. The agents compared it to the forged endorsement. Agent Kennedy concluded that Macklin probably was the forger. Kennedy testified that he had informed Macklin during their conversation in front of the house that he was not under arrest and that he was free to walk away from the interrogation.

At the time of Macklin's interrogation, Mack was inside the house. When Macklin finished speaking with the agents, he went

inside the house and brought out Mack. Kennedy also informed her that she was not under arrest, was free to leave, and did not have to answer his questions. At the end of his interrogation of Mack, Kennedy asked both defendants to come the next morning to his office in the Memphis Federal Building. Kennedy testified that he had no difficulty in communicating with either defendant.

Mack and Macklin appeared at Kennedy's office on the morning of August 25, 1987 by their own means. Kennedy testified that he again advised them that they were not under arrest and that they were free to leave at their pleasure. When Kennedy asked them to assist him in preparing written statements about their involvement in the forgery activity, the defendants agreed. They provided statements about how they stole and forged a check made out to Darrell L. Wiggins. Kennedy wrote out the statements, which the defendants initialled and signed.[1] Macklin and Mack also placed their initials under a printed paragraph, appearing on their respective statements, that explained that their statements were voluntary and that they were free to leave at any time.

Macklin is classified as mildly mentally retarded. He has a full scale intelligence quotient (I.Q.) of 59, a verbal I.Q. of 61, and a performance I.Q. of 60, based on a 1987 administration of the Wechsler Adult Intelligence Scale by Macklin's psychologist, Dr. Janine Coury. Coury testified that Macklin's I.Q. was "quite low" and that his reading, spelling and arithmetic abilities were in the bottom .5% of the population. She stated that he "is not able to read written instructions and he has very severely limited capacity to understand verbal instructions. They have to be exceedingly simple and frequently have to be repeated." No other testimony on Macklin's mental capacity was given.

The intelligence test results indicate that Macklin can add and subtract two-digit numbers and make change. He is "capable of understanding, remembering and carrying out simple one and two-step job instructions while maintaining adequate attention and concentration and interacting purposefully with others if the activity is related to the skills he presently has...." Coury also testified that Macklin could read such words as "animal," "himself," and "between."

Mack's I.Q. is 70. She is considered borderline mentally retarded. Coury testified that someone with Mack's I.Q. is "just ever so slightly better off than the mildly retarded." About 6 times more people have I.Q.s of 70 or lower than have I.Q.s of 60 or lower.

Coury and Kennedy were the only witnesses at a December 14, 1988 evidentiary hearing. On May 25, 1989, the district court entered an order suppressing the defendants' confessions. The court concluded that the defendants should not have been questioned on August 25, 1987 outside the presence of counsel. The district court held that the defendants' disabilities and the facts in the case required the agents to advise the defendants of their constitutional rights guaranteed by *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court reasoned that if Macklin and Mack had been read their *Miranda* rights and asked if they understood them, their inability to comprehend the situation might have surfaced; the failure to advise them of their *Miranda* rights rendered their concessions involuntary and suppressible.

## II

### A

■ The government first attacks the district court's order suppressing the confessions on the ground that the defendants were not in custody when they made their statements. A person is entitled to receive *Miranda* warnings only if questioned while in custody. *Miranda v. State of Arizona*,

---

1. On cross-examination at the suppression hearing, Kennedy admitted that the defendants might not have made additional incriminating statements on the morning of August 25. He agreed that he may have simply written out for their signatures the substance of the statements made in their interviews on August 24 at their home.

384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *Berkemer v. McCarty*, 468 U.S. 420, 434, 104 S.Ct. 3138, 3147, 82 L.Ed.2d 317 (1984). Whether a person is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation." *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151; *see also United States v. Mahar*, 801 F.2d 1477, 1499 (6th Cir.1986). The reasonable person test is appropriate because, unlike a subjective test, it does not "place upon the police the burden of anticipating the frailties or idiosyncracies of every person whom they question." *Berkemer*, 468 U.S. at 442 n. 35, 104 S.Ct. at 3151 n. 35 (quoting *People v. P.*, 21 N.Y.2d 1, 9–10, 286 N.Y.S.2d 225, 232, 233 N.E.2d 255, 260 (1967)). Neither Macklin nor Mack testified as to their subjective beliefs. A reasonable person could not have thought that, by being questioned in front of the person's home, in the manner in which Kennedy and Barnett questioned the defendants, the person was in custody.

■ The district court did not make a finding that Macklin and Mack were in custody. The record would not support such a finding. Kennedy repeatedly told the defendants that they were not under arrest and that they were free to cut off his questioning at any point. In *Berkemer*, the Supreme Court refused to extend the safeguards of *Miranda* beyond cases where a suspect's "freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer*, 468 U.S. at 440, 104 S.Ct. at 3150 (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)). *See also United States v. Knox*, 839 F.2d 285, 292 (6th Cir.1988) (holding that the detention of defendants in an airport for questioning by DEA agents did not rise to the level of custodial restraint necessary to implicate *Miranda)*. We hold that as the defendants were not in custody, the agents were not required to advise the defendants of their *Miranda* rights, and thus there is no basis for suppressing the confessions for failure so to advise them.

## B

■ Even if *Miranda* warnings are not required, a confession cannot be used if it is involuntary. *See, e.g., United States v. Washington*, 431 U.S. 181, 186–87, 97 S.Ct. 1814, 1818–19, 52 L.Ed.2d 238 (1977); *Michigan v. Tucker*, 417 U.S. 433, 440–41, 94 S.Ct. 2357, 2361–62, 41 L.Ed.2d 182 (1974). In *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986), the Supreme Court ruled that mental disability alone does not render a confession involuntary. A defendant also must prove coercion, since "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause...." *Id.* 107 S.Ct. at 522. As there is no evidence that the agents exerted any coercion on the defendants, the confessions cannot be considered involuntary.

The district court determined that the confessions were involuntary because it found that the defendants could not appreciate the consequences of confessing and could not protect their rights without some assistance from counsel. Defendants argue that their case falls under the rule of *Henry v. Dees*, 658 F.2d 406 (5th Cir.1981). In *Henry*, the defendant was considered marginally mentally retarded, with an I.Q. between 65 and 69. He made certain statements while in custody awaiting trial, only after being told falsely that he had failed a polygraph test. The Fifth Circuit held that "in considering the voluntariness of a confession, this court must take into account a defendant's mental limitations, to determine whether through susceptibility to surrounding pressures or inability to comprehend the circumstances, the confession was not a product of his own free will." *Henry*, 658 F.2d at 409 (quoting *Jurek v. Estelle*, 623 F.2d 929, 937 (5th Cir.1980) (en banc), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981)). Counsel for Macklin now suggests that Macklin did not perceive that he was free to leave the yard, the home, or the Secret Service office in order to avoid answering the agents' questions. Counsel argues that the reasoning of *Henry* compels the conclusion that Macklin was unable "to comprehend the

circumstances" and hence was coerced into confessing.

*Henry v. Dees* and *Jurek v. Estelle* are not the law in this circuit. Both cases involved persons undoubtedly in custody and subjected to questionable police conduct. Even under the Fifth Circuit's reasoning, however, the defendants cannot prove that the confessions were coerced. In *Jurek v. Estelle*, 623 F.2d at 938, the court held that a voluntariness inquiry must incorporate "a consideration of the totality of circumstances." Nothing in the record before us suggests that the circumstances surrounding the defendants' confessions amounted to coercion. There is no evidence of overreaching on the part of the Secret Service agents. In fact, the evidence indicates that the agents made every effort to assure the defendants that they were at liberty not to respond to the interrogation.

There is no evidence that in this particular case the defendants did not understand the consequences of their actions. The defendants had the capacity to devise a scheme to defraud. In the absence of any contradictory evidence, we conclude that the defendants also had the capacity knowingly to admit to having devised such a scheme. *See McCall v. Dutton*, 863 F.2d 454, 460–61 (6th Cir.1988). Furthermore, it is undisputed that the written statements of August 25 properly reflect the substance of the oral confessions of August 24. Since there is no evidence of any coercion, either actual or constructive, we hold that the confessions were voluntarily made.

C

To summarize the analysis above, Macklin and Mack clearly had the capacity to make an admissible confession, under the circumstances of this case. Given the actions of the agents, no reasonable person would have felt that the person was in custody, and thus *Miranda* warnings were not required. The agents took no actions that could objectively be considered as coercion, and thus there is nothing to be contrasted with the facial validity of the confessions.

While it would obviously be to the benefit of the defendants in this case to view their status as retarded individuals as depriving them of the free will necessary to make a voluntary confession, such a rule would not be in the interests of retarded citizens generally, or of these individuals in other circumstances.

Confessions are allowed in evidence as a concomitant of the free will of individuals to make meaningful statements. That same free will is the basis of a host of valuable concomitants of citizenship: the right to testify, the right to conduct a defense, the right to make contracts, and the right to vote, for example. If the retarded citizens before us in this case are to be treated as lacking the free will necessary for making a valid confession, by what logic could they not also be denied the other rights mentioned above? As Justice O'Connor has said, "reliance on mental age to measure the capabilities of a retarded person ... could have a disempowering effect in other areas of the law. Thus, on that premise, a mildly retarded person could be denied the opportunity to enter into contracts or to marry by virtue of the fact that he had a 'mental age' of a young child." *Penry v. Lynaugh*, —— U.S. ——, 109 S.Ct. 2934, 2958, 106 L.Ed.2d 256 (1989).[2]

 There has been a widespread realization that having a supposedly "protected" status—as, for example, with women for most of our history—will almost inevitably carry with it an exclusion from important benefits in society. The protection of women by limiting their hours, wages, or conditions of employment meant their exclusion from significant opportunities. *See, e.g., West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *International Union, UAW v. Johnson Controls, Inc.*, 886 F.2d 871, 912–

---

**2.** *See also* Ellis & Luckasson, Mentally Retarded Criminal Defendants, 53 Geo.Wash.L.Rev. 414, 464 (1985) (suggesting that a retarded defendant who stands trial but is deemed incompetent to plead "is denied the opportunity to reduce his sentence through effective plea bargaining—an opportunity available to all other defendants.... Denying this opportunity to [a] defendant solely because of his disability offends basic notions of fairness and equal protection.")

13 (7th Cir.1989) (Easterbrook, J., dissenting). As Justice Marshall noted in *Dothard v. Rawlinson*, 433 U.S. 321, 345, 97 S.Ct. 2720, 2734, 53 L.Ed.2d 786 (1977), "the pedestal upon which women have been placed has ... been revealed as a cage." Thus, in *this* case defendants' attorneys argue that their clients lack the attributes necessary to make a valid confession. However, those same attributes are the basis for the myriad valuable rights of citizenship. We believe that under existing law and the facts of this case defendants should be held to the standards of other citizens, just as they should be permitted the same opportunities. *See* Williams, The Equality Crisis: Some Reflections on Culture, Courts, and Feminism, 7 Wom.Rts.L. Rep. 175, 196 (1982).

Defendants demonstrated the ability to avail themselves of the incidents of citizenship: living independently, and exercising sufficient will to undertake and successfully execute the theft and forgery at issue in this case. It is no favor to exclude a person from the responsibilities as well as rights of citizenship, absent a compelling showing that the person is, in fact, incapable of exercising those rights and suffering those responsibilities.

The district court's May 25, 1989 order suppressing the confessions of Albert Ray Macklin and Earnestine Mack is reversed.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, dissenting.

In many respects this case represents good police work. It is clear, however, that defendants were of abnormally low intelligence and that *Miranda* warnings were not given. Even though appellants had not been taken in custody, it is also true they had not been furnished counsel or waived same. As the district court held, the government agents should have taken further precautions to insure that Macklin and Mack understood the situation and their rights. See *Henry v. Dees*, 658 F.2d 406, 411 (5th Cir.1981).