929 F.2d 702
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur CLARK, Defendant-Appellant.
 No. 90-1575.
 United States Court of Appeals, Sixth Circuit.
 April 4, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 88-80837; LaPlata, J.
 E.D.Mich.
 AFFIRMED.
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant Arthur Clark appeals his conviction and sentence for possession of stolen mail and receiving and exchanging stolen treasury checks. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 From October 1987 to February 1988, the Michigan Employment Security Commission (MESC) issued the twenty-seven checks involved in this case. Those checks were mailed to the intended recipients. During this same period, the four U.S. treasury checks involved in this case were issued and mailed. Neither the payees of the MESC checks nor the payees of the treasury checks received their respective checks. None of the payees authorized anyone to endorse, possess or otherwise dispose of their checks.
 
 
 3
 An investigation conducted by the Secret Service indicated that the four treasury checks had been deposited into Arthur Clark's bank account. On April 22, 1988, MESC Investigator Ronald Collins, Secret Service Agent Mark Sullivan and Jim Slowick of the U.S. Department of Labor interviewed Clark at his home concerning the MESC and treasury checks. Clark initially claimed that he had no knowledge of the checks. Later in the interview, however, Clark admitted knowledge of the checks but claimed that he obtained the checks from Sam Roggin. Clark claimed that the checks were obtained from Sam Roggin in payment for towing services that he had provided Roggin. The interview was terminated after Clark contacted his attorney.
 
 
 4
 Later, Allen Roggin stated that his father, Sam Roggin, died in February 1988. Allen knew of the defendant but had no knowledge of Clark towing any cars for his father.
 
 
 5
 Clark maintained an account with Michigan National Bank. The MESC checks and the treasury checks had Clark's account number written on the back. Each of the checks had been deposited in Clark's business account, Clark Towing and Storage. None of the checks contained an endorsement for Clark. In March 1988 the Michigan National Bank learned that the payees had not endorsed the checks deposited in Clark's account. Clark's fingerprints were found on each of the four treasury checks and on four of the MESC checks.
 
 
 6
 On October 24, 1989, Arthur Clark was charged in a thirty-five count indictment in the Eastern District of Michigan. Counts one through thirty-one charged Clark with possession of stolen mail, in violation of 18 U.S.C. Sec. 1708. Counts thirty-two through thirty-five charged Clark with receiving and exchanging stolen treasury checks, in violation of 18 U.S.C. Sec. 510(b).
 
 
 7
 Counts one through twenty-seven involve the twenty-seven MESC checks. Counts twenty-eight through thirty-one involve the four U.S. treasury checks. Counts thirty-two through thirty-five involve the same treasury checks enumerated in counts twenty-eight through thirty-one. On January 30, 1990, a jury found Clark guilty of thirty counts of possession of stolen mail and three counts of receiving and exchanging stolen treasury checks. This appeal followed.
 
 
 8
 Clark raises six issues on appeal: (1) whether the trial court committed reversible error in denying his motion to suppress; (2) whether the evidence was sufficient to support his convictions; (3) whether the trial court erred in denying his motion for mistrial; (4) whether the trial court erred in giving erroneous instructions to the jury; (5) whether the trial court erred in allowing secret service agent Koscinski to testify that she determined that the treasury checks were stolen; and (6) whether the district court erred in sentencing Clark with an adjustment for willful obstruction of justice.
 
 II.
 
 9
 The first issue on appeal is whether the trial court committed reversible error in denying Clark's motion to suppress. Clark challenges the admissibility of statements he made on April 22, 1989, to MESC Investigator Ron Collins, Secret Service Agent Mark Sullivan and Jim Slowick of the U.S. Department of Labor. Clark contends that these statements were obtained in violation of his Fifth Amendment right against self-incrimination. We review the district court's legal conclusions with respect to Clark's alleged fifth amendment violation under a de novo standard. Factual findings are reviewed under the clearly erroneous standard. United States v. Sangineto-Miranda, 859 F.2d 1501, 1512 (6th Cir.1988) (citations omitted).
 
 
 10
 Prior to the interview in question, which took place in the living room of Clark's home, no one read Clark any Miranda rights. Clark initially denied any knowledge of the checks. Later, Clark asserted that the checks were given to him by Sam Roggin. After phoning his attorney, Clark told the agents that he had nothing else to say to them, and the interview was terminated. Clark testified that agent Slowick read Miranda rights to him after the questioning but before Clark called his attorney. Clark testified that during the interview he did not feel free to leave. He also stated that at least two of the three agents were armed.
 
 
 11
 Miranda rights attach when one is interrogated while in custody. Oregon v. Mathiason, 429 U.S. 492, 494 (1977). The question here is whether Clark was "in custody" during the interview. "Whether a person is in custody depends upon 'how a reasonable man in the suspect's position would have understood his situation.' " United States v. Macklin, 900 F.2d 948, 951 (6th Cir.), cert. denied, 111 S.Ct. 116 (1990) (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)).
 
 
 12
 The trial court held a hearing on Clark's motion to suppress and denied Clark's motion orally. At the hearing, Ronald Collins testified that Clark's mother let them into the house, that he and the other two agents identified themselves, that the agents did not brandish any firearms, that the agents did not tell Clark that he was under arrest and that they didn't produce or mention an arrest warrant (they did not have an arrest warrant). Collins also stated that neither he nor the other agents told Clark that he would go to jail if he refused to answer their questions. Collins' testimony was corroborated at the hearing by agent Sullivan. Further, Clark's testimony at the hearing revealed that he never actually saw a gun on either Slowick or Sullivan. Collins did not have a gun.
 
 
 13
 Given these facts, we must conclude that Clark was not "in custody" during the April 22, 1989 interview. The facts reveal that Clark was not " 'deprived of his freedom of action in any significant way.' " Mathiason, 429 U.S. at 495. The interview took place in the living room of Clark's home while his mother was present in the house. See United States v. Bush, 820 F.2d 858, 862 (7th Cir.1987) (Miranda warnings not required when defendant questioned "in the privacy of his own home ... [and defendant] was neither under arrest nor was his freedom of movement impaired."). Clark was not subjected to "the functional equivalent of a formal arrest." Berkemer v. McCarty, 468 U.S. 420, 442 (1984) (custody exists where suspect subject to a formal arrest or its functional equivalent). He was not threatened or told that he was under arrest, and we find that a reasonable person in Clark's position would not have thought that being questioned in his own home in the manner in which the agents questioned Clark, constituted custody. See Macklin, 900 F.2d at 951 (reasonable person would not have thought he was in custody while being questioned in front of his home when officers told defendant repeatedly that he was not under arrest and was free to cut off questioning). Moreover, Clark was able to terminate the interview at any time, as evidenced by his stating that he had nothing else to say to the agents and the interview thus concluding. The fact that Clark was the "focus" of an investigation is not dispositive of this issue. Beckwith v. United States, 425 U.S. 341, 347 (1976) (fact that focus of investigation was upon defendant did not render interview violative of fifth amendment right absent "custody").
 
 
 14
 Based on the totality of the circumstances, we must conclude that Miranda rights did not attach in this situation because Clark was not "in custody." Thus, Clark's fifth amendment right against self-incrimination was not violated.
 
 III.
 
 15
 The second issue is whether the evidence was sufficient to support Clark's convictions. The standard of review here is whether, "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Martin, 897 F.2d 1368, 1373 (6th Cir.1990) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 A.
 
 16
 Clark first argues that the evidence was insufficient to support his conviction for possession of stolen mail. In order to sustain a conviction for possession of stolen mail pursuant to 18 U.S.C. Sec. 1708, the government must prove the following elements beyond a reasonable doubt:
 
 
 17
 (1) That the defendant possessed articles that had been deposited in the mail for delivery;
 
 
 18
 (2) That the articles had been stolen from the mail; and
 
 
 19
 (3) That when the defendant possessed the articles, he knew they were stolen.
 
 
 20
 United States v. Hart, 640 F.2d 856, 857 (6th Cir.), cert. denied, 451 U.S. 992 (1981). Clark contends that there was no evidence to show that any of the checks had been placed in the mail as required by 18 U.S.C. Sec. 1708. Clark argues that the checks could have been intercepted prior to being placed in the mail.
 
 
 21
 It is well-settled that the fact of mailing may be established by proof of the government's routine mailing procedures. United States v. Powell, 453 F.2d 885, 885 (6th Cir.), cert. denied, 406 U.S. 960 (1972). Under Powell, one may show that a particular check reached the United States mails by proving the "usual manner of preparation and mailing of checks." Id.
 
 
 22
 With respect to the MESC checks, a MESC computer printout admitted into evidence identified when the twenty-seven MESC checks involved in this case were issued. Further, Mary Shearer, the administrative assistant to the director of the Bureau of Field Operations at MESC, testified that it was the normal course of business that MESC checks are placed in the mail. Shearer also testified that the twenty-seven MESC checks involved in this case were actually mailed by reference to the MESC certification screen. Finally, the parties stipulated that the twenty-seven payees of the checks did not receive their checks. With respect to the treasury checks, certified certificates of mailing demonstrating that the treasury checks were mailed were admitted into evidence. Moreover, the parties stipulated that the payees of these checks did not receive them and that the signatures on the checks were forgeries.
 
 
 23
 As the evidence presented at trial complies with Powell, we conclude that there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that the twenty-seven MESC checks and the four treasury checks were mailed.
 
 B.
 
 24
 Second, Clark contends that the evidence was insufficient to support his conviction for receiving and exchanging stolen treasury checks. We disagree.
 
 
 25
 18 U.S.C. Sec. 510 provides that the government must prove that the defendant knew that the checks in question were stolen or that the checks bore a forged endorsement. 18 U.S.C. Sec. 510(b). Clark contends that the evidence failed to show that he knew that the checks were stolen. Clark asserts that "[i]f he knew they were stolen, he would certainly not have placed them in his checking account and with his personal identification number." Appellant's Brief at 18.
 
 
 26
 "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.' " United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). Moreover, "[t]he government must be given the benefit of all inferences which can reasonably be drawn from the evidence ... even if the evidence is circumstantial. United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied sub nom. Freeman v. United States, 469 U.S. 1193 (1985) (citations omitted). After reviewing Clark's contention here, we are compelled to conclude that he has not carried his burden and that a rational trier of fact could have found that Clark knew that the treasury checks were stolen beyond a reasonable doubt. His argument here is simply conclusory and speculative at best.
 
 
 27
 We need not indulge in an exhaustive recitation of the evidence presented at trial. Given the totality of the evidence presented, the jury could have reasonably found that Clark knew the checks were stolen: (1) the checks were stolen; (2) Clark initially denied any knowledge of the checks; (3) none of the payees of the treasury checks authorized anyone to endorse or possess their checks; (4) Allen Roggin testified that Clark never towed any cars for his father; (5) the checks were deposited in Clark's account; and (6) Clark's fingerprints were on the checks.
 
 
 28
 Therefore, we find that their was sufficient evidence from which the jury could have found that Clark knew the checks were stolen.
 
 IV.
 
 29
 Clark next contends that the trial court erred in denying his motion for mistrial. Clark argues that the trial court impermissibly admitted evidence of other crimes, creating unfair prejudice warranting a mistrial. "We review a district court's denial of a motion for a mistrial for abuse of discretion." United States v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990), petition for cert. filed, No. 90-5804 (Sept. 24, 1990).
 
 
 30
 When questioned about items stolen from his mail, claimant Harry Gibbs, a government witness who shared a building with Clark, stated:
 
 
 31
 Q. Do you remember if anything was stolen from you mails? You mentioned a credit card. Could you explain exactly what happened?
 
 
 32
 A. Well, they mail out me a credit card, they said, and they mailed him one.
 
 
 33
 A. You say him, who?
 
 
 34
 .............................................................
 
 
 35
 ...................
 
 
 36
 * * *
 
 
 37
 A. Clark.
 
 
 38
 .............................................................
 
 
 39
 ...................
 
 
 40
 * * *
 
 
 41
 A. That's what the credit called me and said--I had tore mine up because I didn't send in for the money to take the credit card. So I didn't want the credit. So he, he got his and sent it and put my name--
 
 
 42
 J.App. at 136-37 (testimony of Harry Gibbs). Defense counsel then objected and the jury was excused. While the jury was excused, Gibbs stated that he would testify to the fact that Clark had obtained a credit card with Gibbs' name and had charged about $23,000.00 on it. The trial judge sustained defense counsel's objection on the ground of unfair surprise. Defense counsel then moved for a mistrial. At this point the trial judge stated:
 
 
 43
 Well I don't think, I don't think he said anything yet that entitles you to mistrial because we stopped it in time. All right, I'll deny the motion for mistrial ...
 
 
 44
 J.App. at 140. At this point, the government asked the if the judge would instruct the jury to disregard any remarks made concerning the credit card. Id. Although the court was later prepared to give a curative instruction to the jury regarding the credit card, defense counsel objected to a curative instruction because it would jar the jury's memory concerning the credit card and again moved for a mistrial. Id. at 222-25. Because of defense counsel's objection, the trial court did not give a curative instruction concerning Gibbs' testimony about the credit card.
 
 
 45
 After reviewing the record, we conclude that the trial judge did not abuse his discretion in denying Clark's motion for a mistrial. Although the jury heard Gibbs' testimony that Clark had obtained a credit card in Gibbs' name, the damaging portion of this testimony was heard outside the presence of the jury. Defense counsel's objection was made early enough to preclude that portion of the credit card testimony which was most prejudicial. To be sure, it was definitely more desirable from the defense's perspective that the jury hear none of the testimony concerning the credit card. The question presented, however, is whether the testimony heard by the jury was so prejudicial as to warrant a mistrial. We find that it was not.
 
 
 46
 In addition, there is no evidence that the government acted in bad faith in attempting to bring the credit card incident into evidence. In fact, the government asked for a cautionary instruction concerning the credit card, which the court was prepared to give until defense counsel objected. We note that properly prepared curative instructions are often sufficient to cure any prejudice resulting from the jury hearing inadmissible evidence. See, e.g., United States v. Bowers, 739 F.2d 1050, 1054-55 (6th Cir.) (per curiam), cert. denied sub nom., Oakes v. United States, 469 U.S. 861 (1984). Defense counsel had the opportunity here to submit curative instructions to the court and choose not to do so. Although curative instructions do not cure all prejudicial problems, we think any prejudice resulting from Gibbs' testimony concerning the credit card could have been cured by appropriate instructions. Thus, we find that the trial court did not abuse its discretion in denying Clark's motion for mistrial.
 
 V.
 
 47
 The fourth issue presented is whether the trial court erred in giving erroneous instructions to the jury. Clark challenges the jury instructions on two grounds: (1) the instructions assumed that the mail was stolen; and (2) the instructions shifted the burden of proof on the defendant.
 
 
 48
 Clark failed to object to the jury instructions on the above grounds before the district court and is thus precluded from challenging these aspects of the instructions for the first time on appeal. Fed.R.Crim.Proc. Rule 30, 18 U.S.C.A.; United States v. Wilson, 639 F.2d 314, 316 (6th Cir.1981) (per curiam) ("Having failed to object to this aspect of the jury charge at trial, appellant is precluded by Rule 30 of the Federal Rules of Criminal Procedure from arguing on appeal that it was error."). Although this court may review the instructions for "plain error" under Fed.R.Crim.P. 52(b), we do so only if the instructions were so clearly incorrect as to have resulted in a "grave miscarriage of justice." United Stated v. Piccolo, 723 F.2d 1234, 1241 (6th Cir.1983) (en banc), cert. denied, 466 U.S. 970 (1984). Further, as the court stated in United States v. Hook, "an improper jury instruction will rarely justify reversal of a criminal conviction when no objection has been made at trial." 781 F.2d 1166, 1172-73 (6th Cir.), cert. denied, 479 U.S. 882 (1986) (citation omitted).
 
 
 49
 After careful review, we find that the challenged instructions were not so clearly incorrect as to constitute a "grave miscarriage of justice."
 
 VI.
 
 50
 Clark also contends that the trial court erred in allowing secret service agent Koscinski to testify that she determined that the treasury checks were stolen. The defendant does not make a legal argument here except to simply state that this testimony should have been disallowed. Clark does not argue why this testimony was "inadmissible." This court is not obligated to consider unsupported arguments inadequately developed in the briefs. See United Transp. Union v. Dole, 797 F.2d 823, 827 (10th Cir.1986) (issue may be abandoned or waived by inadequate development in the briefs). See also Fed.R.App.P. 28(a)(2)(4) (requiring statement of issues in briefs and legal arguments respecting the issues presented on appeal). As Clark has failed to sufficiently develop the legal bases for his objection to Koscinski's testimony, we will not consider this objection.
 
 VII.
 
 51
 The final issue before this court is whether the district court erred in sentencing Clark with an adjustment for willful obstruction of justice. We review the district court's factual findings underlying sentencing determinations under a clearly erroneous standard. United States v. Moreno, 899 F.2d 465, 470 (6th Cir.1990).
 
 
 52
 Section 3C1.1 of the United States Sentencing Guidelines provides:
 
 
 53
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 54
 The court added two points to Clark's base level offense because the court found that he willfully impeded or obstructed justice. Clark argues that because his allegedly obstructive acts did not occur in a "judicial proceeding," the two-level increase was error.
 
 
 55
 The government first contends that Clark's failure to object to the obstruction of justice adjustment in the pre-sentence report precludes him from challenging this adjustment on appeal. During the sentencing hearing, however, defense counsel objected to the "allegation in paragraph fifty three on page eleven" of the pre-sentence report. Transcript of Sentencing Hearing at 4. Paragraph fifty-three of page eleven of the pre-sentence report contained the recommended adjustment for obstruction of justice. Thus, the government's waiver argument is moot.
 
 
 56
 Contrary to Clark's assertion, however, there is no requirement that the obstructive act(s) necessarily occur in a judicial proceeding. The plain language of section 3C1.1 states that the adjustment is warranted if the defendant willfully obstructed or attempted to obstruct "the administration of justice during the investigation ... of the instant offense...." The sentencing court found that Clark obstructed or attempted to obstruct the "investigation" into the MESC and treasury checks. This finding by the court is not challenged nor was it clearly erroneous. We find that the court did not err in increasing Clark's base level by two.
 
 VIII.
 
 57
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior Judge for the United States District Court for the Western District of Michigan, sitting by designation